**TENBUSCH et, Plaintiffs-Appellees, v. L. K. N. REALTY CO., Defendant-Appellant.**

Ohio Appeals, Eighth District, Cuyahoga County.

No. 24321.   Decided March 26, 1958.

Henderson, Quail, Schneider & Pierce, for plaintiffs-appellees.
Clarence J. Oviatt, for defendant-appellant.

## OPINION

By HURD, J.

This appeal comes to this court on questions of law from the Court of Common Pleas of Cuyahoga County wherein judgment was entered on a jury verdict for plaintiffs-appellees in the sum of Five Thousand Seven Hundred Fifty Dollars against defendant-appellant. The parties will hereinafter be designated as plaintiffs and defendant as they appeared in the trial court.

The plaintiffs filed their petition alleging in substance that they were duly licensed real estate brokers under the laws of Ohio and that on or about July 26, 1951, they entered into an oral agreement with defendant whereby they were authorized to find a purchaser at the

agreed price of One Hundred Fifteen Thousand Dollars ($115,000.00) for certain property owned by the defendant located at 211-215 St. Clair Avenue in the City of Cleveland, which property is improved by a two-story building, and that defendant agreed to pay therefor a commission of five per cent; that they procured a purchaser ready, willing and able to purchase the property at the price stated, by reason whereof they were entitled to the commission stated.

The answer of the defendant admitted the qualifications of the plaintiffs as real estate brokers, the ownership of the property in question and denied each and every other allegation contained in the plaintiffs' petition.

There is no question that plaintiffs sought the listing of defendant's property but the only evidence in the record as to the terms of such listing is plaintiffs' testimony as to the price of the property and the discussions as to the rate of commission. There is no testimony in the record as to any other terms of the alleged listing, the length of time of the listing or whether it was to be an open or exclusive listing, although the latter is not claimed by the plaintiffs. The record also shows that the property was actually sold through the services of another broker for the sum of Two Hundred Fifty Thousand Dollars ($250,000.00).

The defendant's president and principal stockholder, with whom plaintiffs negotiated in an effort to sell the property, denied that the property was ever listed with the plaintiffs at One Hundred Fifteen Thousand Dollars ($115,000.00) or at any other price.

Plaintiffs' claim is predicated upon a written offer to purchase signed by one William E. Malm. It provides, in part, as follows:

"* * *

"(a) Conveyance to the Purchaser, or his nominee, shall be made by good and sufficient Warranty Deed in the form customarily used in Cuyahoga County, Ohio, and the Seller shall upon delivery of such Deed furnish title guarantee satisfactory to the Purchaser in the amount of One Hundred and Fifteen Thousand Dollars ($115,000.00) guaranteeing title to said premises to be **free from all encumbrances**, except taxes and special assessments, zoning and other ordinances, and other restrictions of record." (Emphasis ours.)

The evidence shows that Malm's offer to purchase was never accepted by defendant. The evidence further shows that defendant's property was encumbered with two leases duly recorded with the County Recorder, being Defendant's Exhibits B and D, which at the time of the offer to purchase had unexpired terms of approximately four years each. One of such leases was with the Charles Bruning Company, Inc., and provided for a term commencing October 1, 1949 and expiring May 31, 1955, at a yearly rental of $8,100.00, to be paid at the rate of $675.00 per month. The other lease was with the Murray Company of Texas, Inc., and provided for a term commencing October 1, 1949 and expiring May 31, 1955, with a total rental of $18,700.00, payable at the rate of $275.00 per month. In addition to the foregoing, the property was encumbered with two other leases, making a total of four.

In this connection, it is important to observe that there is no

reference whatsoever in the written offer to purchase that the property was then subject to these unexpired leases. The record also shows that Malm and the plaintiffs had knowledge of all of these leases, but on cross-examination, the plaintiffs admitted they did not know why the offer of Malm to purchase did not include them.

The assignments of error are as follows:

1. The court erred in giving special request to charge before argument requested by plaintiff and objected to by defendant.

2. The court erred in its general charge to the jury.

3. The court erred in the admission of evidence offered by the plaintiff and objected to by the defendant.

4. The court erred in overruling defendant's motion for judgment for the defendant made at the close of plaintiffs' case and renewed after all the evidence was in.

5. The court erred in overruling defendant's Motion for New Trial and defendant's Motion for Judgment Notwithstanding the Verdict.

Considering assignment of error number one, a question is presented as to whether the trial court erred in instructing the jury that the leases constituted "restrictions of record."

The record shows that the trial court gave before argument the plaintiff's request in writing to charge as follows:

"The jury is instructed that the four leases introduced in evidence by the defendant, which were recorded, constitute 'restrictions of record' within the meaning of that phrase as used in the 'Offer and Agreement to Purchase Real Estate,' Plaintiffs' Exhibit 2, and such Offer and Agreement was therefore an offer and agreement to purchase the defendant's real estate subject to those four leases."

First let us consider the nature of a lease. In **Brenner v. Spiegle, 116 Oh St 631, syllabus 1, 157 N. E. 491,** the Supreme Court defined a lease as follows:

"A lease of real estate is a conveyance by the owner of an estate in land of a portion of the owner's interest therein to the lessee for a term less than the owner's own, and it passes a present interest in the land. Such a conveyance for a consideration constitutes a sale of an interest in real estate."

To the same effect, see also **Abraham v. Fioramonte, 158 Oh St 213, 222, 107 N. E. 2d 321, 325.** That unexpired leases on land are encumbrances is well-settled.

In **15 O. Jur. 2d, 45, Section 45,** we find a definition of an encumbrance as follows:

"An encumbrance is a right or interest in land which may subsist in third persons to the diminution of the value of the land but which is nonetheless consistent with the passing of the fee by conveyance. A covenant against encumbrances in a conveyance is a stipulation by the covenantor that no such interests exist as to the estate conveyed * * *"

**Stambaugh v. Smith, 23 Oh St 584; Newcomb v. Fiedler, 24 Oh St 463; People's Sav. Bank Co. v. Parisette, 68 Oh St 450. 67 N. E. 896, 96 Am. St. Rep. 672; Gardner v. Letson, 5 O. N. P. 112, 8 O. D. N. P. 256; Shell v. Evans, 6 O. N. P. 230, 7 O. D. N. P. 501,** are cited as authority for this proposition.

That encumbrances include unexpired leases is also well-settled. See **15 O. Jur. 58, Section 64**, which states:

"Among the more common examples of encumbrances within the meaning of a covenant against encumbrances are mortgages or judgments, dower rights, taxes and assessments, easements **and unexpired leases.** A contract for the sale of the land may constitute an encumbrance." (Emphasis ours.)

**Hall v. Plaine, 14 Oh St 417; Stambaugh v. Smith, 23 Oh St 584;** 15 Mor. Min. Rep. 82; **McKenzie v. Buchamann, 5 Oh Ap 270, 25 O. C. C. N. S. 529, 37 O. C. C. 303**, are cited as authority for this proposition. To the same effect, see also 7 Thompson on Real Property (Perm. Ed.), 192, Section 3715, et seq., and numerous authorities there cited.

On the other hand, a restriction is defined in relation to real estate as "A limitation on the free use of land." Webster's Dictionary, Second Edition, Unabridged. See also, 26 C. J. S. 1028, Sec. 141, et seq., where at page 1039, paragraph (f) numerous examples of restrictions are set forth. While the chapter referred to deals with conditions and restrictions, there is no question, upon a review of the authorities cited, that a restriction is something which cannot be equated with a lease for a term of years, which lease is undoubtedly an encumbrance which grants to the lessee an interest in land something less than the fee, whereas a restriction is a mere limitation of use.

We hold, therefore, that the word "restriction" in an offer to purchase realty subject to all existing "restrictions" of record definitely does not include "leases of record" with unexpired terms. Such leases constitute encumbrances of record.

Thus the court committed error prejudicial to the rights of the defendant when it instructed the jury in its charge in writing before argument that the four leases introduced in evidence by the defendant constituted "restrictions of record" within the meaning of that phrase as used in the Offer and Agreement to Purchase Real Estate submitted by plaintiffs to defendant.

This brings into focus the further consideration that the leases, being an interest in land, should have been excepted from the provisions of the offer to purchase which required the property to be free and clear of all encumbrances. The plaintiffs' admitted knowledge of these leases, and according to their testimony, expected that these encumbrances would be settled between the parties in some way, or that as testified by one of the plaintiffs "Details of that sort * * * could be worked out" or, as further testified, "If there were any details to work out, they would be worked out to the satisfaction of everybody."

It is clear, therefore, that the offer to purchase did not constitute a firm offer since the defendant would be required either to accept or reject the offer according to its terms as submitted in writing. If accepted according to its terms, defendant would then be obliged to warrant against these encumbrances or to remove them entirely, which certainly, according to the record, was not an obligation which should be assumed by the defendant on the plaintiffs own admission. Therefore, it clearly appears from the record that the plaintiffs' claim for a commission for the production of a purchaser ready, willing and able

to purchase the property of the defendant cannot be sustained. We conclude, therefore, that the first assignment of error is well taken and must be sustained and secondly, on this aspect of the case, as shown by the record, the plaintiffs failed to produce evidence sufficient to warrant a recovery in their favor.

The defendant complains of error in the general charge of the court to the jury. We have examined the general charge and have concluded that the general charge, when considered as a whole, was not erroneous.

Considering defendant's assignment of error number three, the defendant complains of error in the admission by the court into evidence of three carbon copies of letters identified by plaintiffs as Exhibits four, five, and seven. Aside from the fact that these are carbon copies and that no originals were introduced or requested, we find that these letters are merely self-serving declarations, and as such, are inadmissible into evidence. It has been held that the provisions of §2317.40 R. C., that certain records shall be competent evidence, are not intended to make competent in evidence records that may be classified as self-serving declarations. **Zeigler Mill. Co. v. Denman, 79 Oh Ap 250, 34 O. O. 573, 72 N. E. (2d) 686.** Also, in **Robinson-Lloyds, Ltd. v. Dept. of Liquor Control, 91 Oh Ap 521, 49 O. O. 111. 108 N. E. (2d) 748**, it was held that carbon copies of letters containing self-serving declarations sent by a party to the adverse party are not admissible in evidence. The plaintiff cannot make evidence for himself by writing a letter containing the statements he wishes to prove. **Hahn v. United States, 55 O. O. 159, 123 F. Supp. 767.** For the reasons stated, the assignment of error number three must be sustained.

Assignment of error numbers four and five are that the court erred in overruling defendant's motion for judgment for the defendant, motion for new trial and for judgment non obstante veredicto. The defendant advances as ground for the error here assigned the fact that one Mr. Lynn, the president, was not authorized by his corporation to offer the property for sale and hence that the defendant corporation is not bound by his actions.

There is no merit to this claim where, as here, the president of the corporation was the owner of 220 of the 250 shares of stock of the corporation and his wife and two minor sons owned all the other shares. Not only was Mr. Lynn president of the company but he was the treasurer and a director, while his wife was secretary and a director. The defendant had but one other director. He held the office of vice-president but owned no stock. Under these circumstances, this ground for error is overruled.

We have heretofore made reference to the fact of the omission from the offer of acceptance the unexpired leases which were encumbrances upon the property and not restrictions of record. We think the omission of these leases is fatal to the plaintiffs' case for the reasons hereinbefore stated.

We have also reached the conclusion that under the circumstances, as shown by the evidence in the record, it cannot be said as a matter of law that the alleged listing was sufficiently definite and certain as to

constitute an offer and the production of a purchaser by the plaintiffs who would pay $115,000 for the property did not result in a binding contract between the parties so as to make defendant liable for a real estate commission.

The rule as stated in 43 A. L. R. 842, 848, is:

"The fact that a broker approaches an owner of real estate, and asks of him the terms at which he is willing to sell his property and is informed thereof, is not in itself sufficient to show a contract of employment by the owner and a consequent liability to pay a commission to the broker on his procuring a purchaser."

If the rule was otherwise, no person would be safe in stating the price of his own property in the hearing of a broker.

In 8 Am. Jur. 1079, Section 159, it is stated:

". . . Nor does the mere asking and receiving of the price constitute the broker the agent of the owner, entitling him to commissions, although he finds a purchaser. * * *"

There is no evidence in the record here that the defendant consented to the plaintiffs acting as his agent, the testimony only relating to the price of the property and that a commission was discussed. A broker can derive no authority by voluntarily thrusting his services upon another without the latter's consent. Annot. 93 Am. Dec. 172.

In 12 C. J. S. 32, Sec. 12, it is said:

"* * * The mere leaving of a description of the property at the office of a broker, by the owner or his agent, with a request that the broker sell the property at a designated price and on designated terms, amounts to an employment of the broker; **but the mere fact that a broker asks and obtains from the owner of land the price at which he is willing to sell it does not of itself establish the relation of principal and agent between them.**" (Emphasis ours.)

In 4 R. C. L. 248, Section 5, the same rule is set forth:

". . . The mere asking and receiving the price of property, however, is not of itself sufficient to establish the employment of a broker, nor would the subsequent disposal of the property to one with whom the broker negotiated amount to a ratification of his act. A broker cannot derive authority by voluntarily thrusting his services upon another without the latter's consent . . ."

The burden of proof is upon the plaintiffs to establish a contract of employment or an offer upon the defendant's part which would result in a binding contract when a purchaser was produced. The mere asking and receiving of the price of property and the discussion of a commission when the broker himself is the party soliciting the listing of property, nothing more being shown, is insufficient as a matter of law to establish a basis for the recovery of a commission.

For all of the foregoing reasons, the judgment of the Court of Common Pleas is reversed and proceeding to enter the judgment which should have been entered by the trial court, final judgment is rendered for the defendant.

Exceptions noted.

SKEEL, PJ, KOVACHY, J, concur.