HI-LO OIL CO., INC., APPELLANT, *v.* McCOLLUM, APPELLEE, ET AL.

(No. CA86-09-020—Decided April 13, 1987.)

*Richard E. Pryor,* for appellant.

*Frantz, Hubler, Mawer & Dues Co., L.P.A.,* and *James T. Frantz,* for appellee.

*Pickrel, Schaeffer & Ebeling* and *Gordon H. Savage,* for Chicago Title Ins. Co., A. William King and King's Title & Abstract Co.

*Per Curiam.* This cause came on to be heard upon an appeal from the Court of Common Pleas of Preble County.

Plaintiff-appellant, Hi-Lo Oil Co., Inc. ("Hi-Lo"), appeals the decision and judgment entry granted in favor of defendant-appellee, Neil P. McCollum, following a bench trial in the common pleas court.

The pertinent facts of this case, as derived from the record and the trial court's findings of fact, are as follows: Hi-Lo holds title to a one-acre plot of real estate situated on State Route 40 in Preble County, just east of the Ohio-Indiana border, which plot is used for the sale of gasoline and other petroleum products. Hi-Lo's predecessor in title, the Tommy Oil Co. ("Tommy Oil"), originally purchased the property from defendant S.J. Holthouse Farms, Inc. ("Holthouse") in 1969. Holthouse's deed of conveyance to Tommy Oil contained the following language:

"As part consideration herein grantor covenants that it shall restrict its property located between grantee's tract and the tract presently owned by the Sixty-Eight Scarteen Corp. from use for sale of petroleum products by all others except grantee and the Sixty-Eight Scarteen Corp., their successors or assigns."

New Creations, Inc. ("New Creations") purchased the land situated between Hi-Lo's tract and Sixty-Eight Scarteen Corp.'s tract from Holthouse in 1977. In May 1979, New Creations sold a portion of its tract to McCollum. Neither Holthouse's deed to New Creations nor the New Creations deed to McCollum contained any restriction prohibiting the sale of petroleum products on the land in question.

After purchasing the property, McCollum constructed a truck wash and began operations. In March 1980, McCollum contacted George Earley, a Preble County attorney who handled the 1969 Holthouse-Tommy Oil conveyance, and asked whether the language in Holthouse's deed to Tommy Oil prohibited McCollum from selling petroleum products. Earley informed McCollum that the deed from Holthouse to Tommy Oil imposed no restrictions on McCollum's real estate. Within a year, McCollum installed pumps and fuel tanks on the site of his truck wash and began selling diesel fuel.

McCollum's action prompted Hi-Lo to file a complaint on April 15, 1981, in which Hi-Lo sought an injunction against McCollum to prohibit any further petroleum sales and damages from Holthouse for lost profits and diminished petroleum sales resulting from McCollum's sales.[1]

The trial court, in a decision dated November 22, 1985, found that the language used in the Holthouse-Tommy Oil deed either "create[d] a restriction or a promise to restrict." The court concluded that the parties could have used other language of a more forceful nature in order to impose an actual restriction on the land eventually acquired by McCollum. The court went on to note that "[t]he language used represents a covenant to restrict, but is itself not sufficient to create a restriction [and that] [n]o restriction was ever created."

Hi-Lo presents two assignments of error in its appeal, both of which essentially claim that the trial court erred as a matter of law in granting judgment to McCollum and ruling that there was no restriction on McCollum's land.

The parties' positions are clear with respect to the issues raised herein. Hi-Lo asserts that the language contained in the Holthouse deed to Tommy Oil constitutes a covenant or restriction on the land eventually acquired by McCollum. On the other hand, McCollum argues that the language is not, of itself, a restriction but only a promise by Holthouse to impose a restriction in the future.

We do not argue with the basic principle, stated by the trial court and adopted by McCollum, that where language in a deed restriction is "indefinite, doubtful and capable of contradictory interpretations, that construction must be adopted which least restricts the free use of the land. * * *" *Houk* v. *Ross* (1973), 34 Ohio St. 2d 77, 63 O.O. 2d 119, 296 N.E. 2d 266, paragraph two of the syllabus. However, the intention of the parties and any proper construction of a covenant or a restriction is to be based upon a reading of the entire deed as a whole. *Slife* v. *Kundtz Properties, Inc.* (1974), 40 Ohio App. 2d 179, 184, 69 O.O. 2d 178, 181, 318 N.E. 2d 557, 561.

The trial court interpreted the language in the Holthouse deed as a covenant or promise to restrict, but not as an actual restriction on the land. The trial court concluded that Holthouse promised to take whatever future action was necessary to accomplish the bargained-for restriction, rather than imposing an actual limita-

---

[1] McCollum filed a third-party complaint against New Creations, King's Title & Abstract Co. and A. William King, the parties hired by McCollum to research and abstract the title, and Chicago Title Insurance Co., which had issued a title insurance policy in favor of McCollum. Numerous cross-claims were then filed between the various defendants and third-party defendants. The only matter currently on appeal, however, is the judgment rendered with respect to Hi-Lo's complaint against McCollum.

tion on its remaining real estate. With respect to this interpretation, Holthouse could have inserted a restrictive covenant in the deed when conveying the remaining real estate. Even in that event, the question remains as to whether Holthouse's promise to Tommy Oil to take "future action" would require Holthouse to file injunction suits and restrict the use of the property it had already sold.

It is obvious that when Tommy Oil purchased its tract from Holthouse it wanted a limitation or restriction on the surrounding property's use. A "restriction," in relation to real estate, is defined as "* * * '[a] limitation on the free use of [the] land.'* * *'" *Tenbusch* v. *L.K.N. Realty Co.* (1958), 107 Ohio App. 133, 137, 78 Ohio Law Abs. 82, 86, 8 O.O. 2d 19, 22, 149 N.E. 2d 42, 46. Although the deed language less than forcefully expresses a limitation on use, it is obvious that the selected language was nevertheless used within the context of a restriction which both the vendor and vendee agreed was required before Tommy Oil would pay the purchase price and take title. Undoubtedly, both parties intended to impose such a burden or limitation upon the land. Hi-Lo is entitled to bring this action as well. A party for whose benefit a restrictive covenant was enacted is entitled to seek its enforcement. See *Berger* v. *Van Sweringen Co.* (1966), 6 Ohio St.

2d 100, 35 O.O. 2d 127, 216 N.E. 2d 54. The restriction herein was imposed for the benefit of Tommy Oil and its successors and assigns.[2]

We find that the language used in the Holthouse deed to Tommy Oil imposes a limitation or restriction on the use of the remaining Holthouse property — at least within the limited factual context of the case *sub judice*. The trial court found that McCollum was aware of other parties' belief that the land he was purchasing had a limitation upon its use. A review of the record reveals that McCollum was aware of more than simply a "belief" that the land was restricted. Gene Lindley owned and operated the State Line Truck Stop, located on the land owned by Sixty-Eight Scarteen Corp. Lindley testified by deposition that McCollum approached him in April 1979 and indicated that he planned to purchase the adjacent property for building a truck wash and wanted a right-of-way over Lindley's property. Lindley, who equated a truck wash with the sale of petroleum products, told McCollum that a deed restriction existed on the land which prohibited the sale of petroleum. McCollum replied that he "was very well aware" of the restriction and assured Lindley that he had no intention of selling petroleum products.[3]

In addition, Timothy Cummins, the founder and president of New Crea-

---

[2] The record reveals that Tommy Oil merged with Highway Oil, Inc. which succeeded to Tommy Oil's interest. Since Highway Oil, Inc. was not authorized to do business in Ohio, all of Tommy Oil's assets, including the real estate, were assigned, transferred and conveyed to Hi-Lo, a wholly owned subsidiary of Highway Oil, Inc.

[3] Based upon McCollum's assurances, Lindley provided a credit card imprinter to McCollum so McCollum's customers could charge their truck washes on credit cards issued by Lindley's parent company, with

Lindley purchasing the invoices from McCollum at a discount. Lindley testified that he terminated this relationship and removed the imprinter when, in what Lindley termed a violation of their agreement, McCollum began selling petroleum products in direct competition with Lindley's business. Lindley further testified that he had been aware of the restriction since the early 1970s and had even turned down a chance to purchase the land himself since he had no reason to worry about a competing business located on that property.

tions, testified that prior to the conveyance to McCollum he asked McCollum if he was aware that he could not sell petroleum products on the property should he purchase the land. Cummins stated that McCollum indicated that he was aware of the restriction.

Obviously, McCollum received enough information concerning the restriction to warrant an inquiry directed towards the attorney who prepared the original conveyance to Tommy Oil. A restriction can be enforced against one who takes the estate with notice of such restriction, even though the restriction or covenant does not purport to bind subsequent assignees. See *Gillen-Crow Pharmacies, Inc.* v. *Mandzak* (C.P. 1964), 8 Ohio Misc. 47, 52-55, 37 O.O. 2d 60, 63-64, 220 N.E. 2d 852, 857-858, subsequently affirmed (1966), 5 Ohio St. 2d 201, 34 O.O. 2d 417, 215 N.E. 2d 377. Of course, the degree of notice would have an, impact upon the enforceability of a restriction. The case at bar, however, suggests that McCollum possessed actual notice — notice which is far superior to any other type — of the limitation. Equity would certainly argue for enforcement of the restriction where one takes the property with actual notice of the limitation notwithstanding the absence of the limitation in the chain of title, especially where adjacent landowners have relied upon the restriction. Within this context, we therefore find the assignments of error to be well-taken and remand the matter for a more complete determination of whether McCollum had notice of the limitation prior to his purchase and the extent of that notice.

The assignments of error properly before this court having been ruled upon as heretofore set forth, it is the order of this court that the judgment or final order herein appealed from be, and the same hereby is, reversed and the cause is remanded for further proceedings according to law and not inconsistent with this decision.

*Judgment reversed and cause remanded.*

JONES, P.J., and YOUNG, J., concur.

KOEHLER, J., dissents.

KOEHLER, J., dissenting. Simply stated: "A" is the owner of Whiteacre and Blackacre, adjoining tracts of land.

"A" sells Whiteacre to "B" and the conveyance contains language which covenants that the future use of Blackacre shall be restricted. Subsequently, "A" sells Blackacre to "C" and the deed contains no restrictive covenant.

Obviously, "A" has breached the covenant contained in the deed to Whiteacre, but is the purchaser of Blackacre subject to the limitation contained in the conveyance to Whiteacre?

The majority has concluded that the promise contained in the deed to Whiteacre has, by some equitable mystique, been impressed upon Blackacre and the purchaser of Blackacre is restricted in his use of the land. I disagree.

Common ownership of adjacent tracts of real estate is not sufficient to allow such a result. The authorities relied upon by the majority, while valid for the propositions considered therein, are not applicable to the facts in this cause.

Even if "C" had full and complete knowledge of the agreement between "A" and "B," the promise to restrict other property in the future is not a restriction on such other property. While "B" may have a cause of action against "A" for breach of the covenant contained in the deed to Whiteacre, it is of no force and effect as a restriction on Blackacre. Accordingly, I dissent.