671 A.2d 485

James S. MAGRAW and Deborah L. Magraw

v.

Robert M. DILLOW.

No. 19, Sept. Term, 1995.

Court of Appeals of Maryland.

Feb. 8, 1996.

494

Certiorari to the Court of Special Appeals, Circuit Court, Cecil County; Edward D.E. Rollins, Jr., Judge.

Franklin T. Caudill (C. Thomas Brown, Albright & Brown, on brief), Baltimore, for petitioner.

Robert F. Kahoe, Jr. of Bel Air, for respondent.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, CHASANOW, KARWACKI, BELL, and RAKER, JJ.

KARWACKI, Judge.

We are presented here with the question of the scope and application of the special covenant against encumbrances, which is described in Maryland Code (1974, 1988 Repl.Vol.), § 2–110 of the Real Property Article. Because the Court of Special Appeals properly construed the covenant under the circumstances of the instant case, we shall affirm.

## I.

At issue are four adjoining properties that together comprise 5.09 acres of land located in Cecil County. Prior to 1983, James S. Magraw (James) owned an undivided ⅚ interest in those unimproved properties. The outstanding ⅙ interest was vested in the heirs of Ms. Helen Squires, who died intestate on January 12, 1947. The record does not reveal how this fractional ownership of the properties originated.

James, apparently realizing that his title to only a fractional interest was probably unmarketable, sought to acquire the remaining ⅙ interest. To do so, James allowed his [1] property tax payments to fall into arrears and eventually Cecil County was forced to institute tax sale proceedings to satisfy the taxes.

---

1. The record does not expressly reflect, but we assume, that prior to his default James was also paying the real estate taxes on the ⅙ interest in the property which he did not own.

At tax sale, James and his wife, Deborah L. Magraw (the "Magraws"), purchased the property. After the statutory period prescribed in Md.Code (1957, 1980 Repl.Vol.), Art. 81, § 100, on October 31, 1983, the Magraws filed a "Bill of Complaint to Foreclose Equity of Redemption" against "James S. Magraw and *ALL Persons having or claiming to have any interest in the property* located in Cecil County, Maryland, described as 5.09 acres of land, more or less, with improvement thereon situated Rock–Battle Swamp Road, S/W of Woodlawn, District EQUITY NO. 7, adjoining the property of or formerly owned by John Carson." [2] As part of the

---

**2.** The relevant statutory law concerning rights of redemption at the time of this tax sale and attempted foreclosure was Maryland Code (1957, 1980 Repl.Vol.), Art. 81, §§ 70–123C, comprising the subtitle, "Tax Sales." Section 103 of that Article directed:

"The plaintiff in any proceeding to foreclose the right of redemption shall be the holder of the certificate of sale. The defendants in any such proceeding shall be the following:

(a) The owner of the property as disclosed by a search of the land records of the county, of the records of the register of wills of the county, and of the records of any court of law or equity of the county.

(b) If the property be subject to a ground rent, the parties defendant shall be the owner of the fee-simple title and the owner of the leasehold title as disclosed by a search of the land records of the county, of the records of the register of wills of the county and of the records of any court of law or equity of the county.

(c) Any mortgagee of the property or his assignee of record, named as such in any unreleased mortgage recorded among the land records of the county.

(d) The State of Maryland may be made a party defendant in any action to foreclose the right of redemption.

(e) The county, or Baltimore City, where the property is located may be made a party defendant in any action to foreclose the right of redemption.

(f) It shall not be necessary to name as defendant any other person having or claiming to have any right, title, interest, claim, lien or equity of redemption in and to the property sold by the collector. Any or all of such persons may be included as defendants by the designation "all persons having or claiming to have any interest in property . . . . . (giving a description of the property in substantially the same form as the description which appears on the Collector's tax bill)." Any or all such persons may be designated throughout the proceeding by the above designation and the cause may proceed against them by publication under order of court as hereinafter provided."

foreclosure proceeding, the Magraws' attorney filed an "Affidavit of Search" required by Md.Code (1957, 1980 Repl.Vol.), Art. 81, § 105, alleging "that he had made the search of title to the subject property for the past forty years, and that the owner or owners of said property are listed in this case, and that he did make a search of all Orphans' Court, Equity Land Records, Judgment Records, etc., in order to ascertain whether or not there were any other owners, or owner to said property." This affidavit proved to be inaccurate in that the records of the Orphans' Court at the time showed that Helen Squires died intestate leaving six heirs. Since the heirs of Helen Squires were not properly notified of the foreclosure, the proceeding failed to foreclose the equity of redemption which they possessed as owners of the ⅙ undivided interest in the properties. *Dillow v. Magraw,* 102 Md.App. 343, 355–364, 649 A.2d 1157, 1163–67 (1994).

In 1988, the Magraws sold the still unimproved properties to Robert M. Dillow (Dillow). Dillow planned to build single family homes on each of the parcels and then to resell the individual parcels. The properties were conveyed by two deeds, one dated August 2, 1988, and the other dated November 7, 1988. The deeds contained identical covenants:

"And the parties of the first part [the Magraws] hereby covenant that they have not done or suffered to be done an act, matter or thing whatsoever, to encumber the property hereby conveyed;[3] that they will warrant specially the property hereby granted;[4] and that they will execute such further assurance of the same as may be requisite."[5]

---

**3.** This is the special covenant against encumbrances that is the subject of this litigation.

**4.** The effect of this special warranty was considered by the Court of Special Appeals in *Dillow v. Magraw,* 102 Md.App. 343, 364–68, 649 A.2d 1157, 1167–69 (1994). Dillow does not contest the holding of that court that he cannot recover under the special warranty.

**5.** Dillow did not seek to recover under this covenant of further assurances.

Industrial Valley Title Insurance Company examined the land records and guaranteed that the Magraws were conveying good and marketable title to the properties. Dillow began construction.

In early 1989, however, trouble arose. Dillow sought financing to complete construction of the homes he was building on the properties. His loan application was denied due to a determination by a second title insurance company that Dillow lacked good and marketable title. The Magraws' attempt after tax sale to foreclose the equity of redemption belonging to the heirs of Helen Squires was deficient and consequently Squire's heirs retained their right to redeem ⅙ of the property.

Dillow brought suit in the Circuit Court for Cecil County against Industrial Valley Title Insurance Company, its agent, Fidelity Title Company, Inc., and the Magraws. The suits against the title company and its agent were voluntarily dismissed for reasons not revealed by the record. Thereafter an amended complaint was filed alleging the facts set forth above and claiming damages for an inability to refinance or sell the properties and for expenses incurred in improving the properties, lost profits, the amount of the purchase price and other expenses. Dillow claimed that the Magraws breached the special warranty contained in the deeds; that they breached the covenant against encumbrances; that they breached express and implied covenants of merchantable title; and, finally that they were negligent in conducting the proceeding to foreclose the equity of redemption held by the heirs of Helen Squires.

The Magraws moved to dismiss the first amended complaint for failure to state a claim upon which relief could be granted. The trial court granted that motion after hearing arguments from counsel for the parties.

Dillow appealed to the Court of Special Appeals. The Court in a well-reasoned opinion affirmed the trial court except with respect to the alleged breach of the special covenant against encumbrances. The court found that Dillow's complaint alleged a sufficient breach of the special covenant against en-

cumbrances and remanded the case to the Circuit Court for Cecil County for further proceedings. The Magraws petitioned this Court for a writ of certiorari which we issued.

## II.

The relevant statute, § 2–110, as well as § 2–111 with which it should be contrasted, is found in Title 2 of the Real Property Article. Sections 2–104 through 2–112 of this title provide rules of construction for the interpretation of covenants by a grantor in a deed of realty. Judge Wilson K. Barnes, speaking for this Court in *Marathon Builders, Inc. v. Polinger,* 263 Md. 410, 283 A.2d 617 (1971), recognized the legislative purpose in enacting these statutes:

> "By the Laws of 1864, ch. 252, the General Assembly provided a shorter form for all of these covenants of title so that thereafter conveyancers in Maryland could use the shorter form without the burden of the rather ponderous form in use by the common-law conveyancers who, quite naturally, were unwilling to eliminate a single word of the long form of covenant generally in use and theretofore construed by the courts. The provisions of the Laws of 1864, ch. 252 now appear as [Title 2 of the Real Property Article]."

> "The General Assembly by providing for the abbreviated form of covenant, however, did not intend either to enlarge or to diminish the meaning and scope of the common law forms. The legislation states that the short form 'shall have the same effect' as the old long form. This is reinforced by the provisions of § 9 of ch. 252 of the Laws of 1864 (Art. 21, § 94)[6], as amended, that all deeds executed in pursuance of the prior provisions 'shall be as valid and effectual as if the covenants in said deed had been expressed therein, in full.' "

---

**6.** This provision provided that "[a]ll deeds which have been heretofore executed in pursuance of the provisions contained in §§ 86 to 93 of this article shall be valid and effectual as if the covenants in said deed had been expressed therein, in full." It was deleted without comment by ch. 349 of the Acts of 1972. It was presumably thought redundant.

*Marathon Builders,* 263 Md. at 414, 283 A.2d at 620; *see also* 4 Herbert Tiffany, *The Law of Real Property* § 999 (3rd ed. 1975).

Sections 2–110 and 2–111 explain the proper construction of covenants against encumbrances:

**"§ 2–110. Effect of covenant that grantor has done no act to encumber.**

A covenant by the grantor in a deed, "that he has done no act to encumber the land," has the same effect as if he had covenanted that he had not done, executed, or knowingly suffered any act or deed whereby the land granted, or intended to be, or any part of it, is or will be charged, affected, or encumbered in title, estate, or otherwise."

**"§ 2–111. Effect of general covenant against encumbrances.**

A covenant by the grantor in a deed, "that the land is free and clear of all encumbrances" has the same effect as if he had covenanted that neither he nor his predecessors in his chain of title had done, executed, or knowingly suffered any act or deed whereby the land granted, or intended to be granted, or any part of it, are or will be charged, affected, or encumbered in title, estate, or otherwise."

Section 2–110 has been a part of Maryland law since the Civil War period.[7] Section 2–111 is of much more recent

---

7. The code provision was adopted by ch. 252, § 7 of the Acts of 1864 and codified as Md.Code (1860 ed.), Art. 24, § 72. As originally drafted, the provision read:

"A covenant by a grantor in a deed for land, 'that he has done no act to incumber said land,' shall be construed and have the same effect as if he had covenanted that he had not done or executed, or knowingly suffered any act, deed or thing whereby the land and premises conveyed or intended so to be, or any part thereof, are or will be charged, affected, or encumbered in title, estate, or otherwise."

When it was recodified in the 1888 code, this provision was moved to Art. 21, § 75. As part of this recodification, two spelling changes were made which highlight the appropriate function of these statutes. The original version used the spelling *"in* cumber" in the first line, but *"en*cumbered" in the last line. The 1888 revision reversed this, using *"en* cumber" in the first line and *"in* cumbrance" in the last line. *Webster's Unabridged Dictionary* (3rd ed. 1976) indicates that the spell-

vintage.[8] But regardless of the age of the respective provisions, they do no more than serve as interpretive guides for covenants that have long existed under the common law.[9]

Before exploring the differences between the special covenant against encumbrances defined in § 2–110 and the general

---

ing *"en* cumbrance" is of more general usage, while *"in* cumbrance" is restricted to the legal setting.

The provision remained unchanged until 1912, when the word "a" was twice removed from the first sentence. The 1939 code revision changed the spelling of "incumbered" in the last line to "encumbered." Md.Code (1939), Art. 21, § 96.

In 1974, when the Real Property Code was revised as part of the overall code revision, the provision was moved to its present location at § 2–110 of the Real Property Article. Simultaneously several minor revisions were made. The revisor's note in the legislation explained those changes:

"This section presently appears as Art. 21, § 5–110 of the Code [where it was moved by Acts of 1972, ch. 349, § 1]. The phrase 'for land' is proposed for deletion as superfluous in light of the definition of 'deed' in § 1–101(c). The phrase 'be construed and' is proposed for deletion because it is unnecessary. The present reference to 'thing' is proposed for deletion as superfluous in light of the use of the phrase 'any act, deed.' The phrase 'and premises' is proposed for deletion as unnecessary. The only other changes are in style."

Ch. 12, § 2 of the Acts of 1974.

8. This provision was born of the code revision process. Prior to the overall recodification of real property laws into the Real Property Article in 1974, ch. 12 of the Acts of 1974, the Code Revision Commission took the intermediate step of reorganizing Art. 21, governing conveyancing. Ch. 349 of the Acts of 1972. The reorganization was described as having minor substantive effect, "The number of substantive changes which have been made in Chapter 349 are few indeed." Md.Code (1972 Interim Supplement to Volume 2). The comment described the changes to then Title V (now Title II):

"[Article 21,] Section 5–111 [now § 2–111 of the Real Property Article] is a new section explaining the effect of a general covenant against encumbrances as distinguished from the limited form of covenant set out in § 5–110 [now § 2–110]. This type of general covenant is recognized and discussed in *Bryant v. Wilson*, 71 Md. 440, 18 A. 916 (1889). This covenant bears the same relationship to the limited form set out in § 5–110, as a general warranty bears to a special warranty."

Md.Code (1972 Interim Supplement to Volume 2).

9. A brief history of the common law history of covenants of title can be found in 4 Herbert Tiffany, *Law of Real Property* § 999 (3rd ed. 1975).

covenant against encumbrances defined in § 2–111, it is first necessary to describe those features they share.

The covenants against encumbrances generally may be described as present covenants in that they are breached, if ever, upon delivery of the deed. *Marathon Builders, Inc. v. Polinger*, 263 Md. at 414, 283 A.2d at 620.[10] They do not usually run with the land, but serve only to benefit the covenantee. *Levine v. Hull*, 135 Md. 444, 447, 109 A. 141, 142 (1919). *See also* Eli Frank, *Title to Real and Leasehold Estates and Liens* (1912) 98. There is no precise definition of an encumbrance:

> "An encumbrance is any right or interest held by someone other than the grantee or grantor which diminishes the value of the estate but not so much that it leaves the grantee with no title at all.[11] The word [encumbrance] has no precise meaning but includes security instruments, leases, mechanics' liens, property tax assessment liens, easements, future interests and covenants running with the land at the time of conveyance, other than those specifically set forth in the deed."

11 *Thompson on Real Property, Thomas Edition* § 94.07(b)(1)(ii)(3) (David A. Thomas ed. 1994 & Supp.1995). Other treatises agree that there is no precise definition of an encumbrance but list those interests held to constitute encumbrances.[12] Maryland courts have also avoided a strict defini-

---

**10.** The present covenants of seisin, of the right to convey, and against encumbrances are distinguished from the future covenants of general and special warranty, of quiet enjoyment, and for further assurances. The future covenants are "not necessarily breached when the deed is delivered but ... may be breached by subsequent events." *Marathon Builders, Inc. v. Polinger*, 263 Md. 410, 414, 283 A.2d 617, 620 (1971).

**11.** This distinguishes the covenant against encumbrances from the covenant of seisin.

**12.** 3 *American Law of Property* § 12.128 (1952) (listing mortgages, judgment liens, taxes, other liens, attachments, leases, inchoate dower rights, water rights, easements, restrictions on use, "or any right in a third party which diminishes the value or limits the use of the land granted."); 4 Herbert Tiffany, *The Law of Real Property* §§ 1002–07

tion of an encumbrance. The Court of Special Appeals in the instant case, undertook to analyze the Maryland cases that define an encumbrance. 102 Md.App. at 369–372, 649 A.2d at 1170–71, (*citing Levine v. Hull*, 135 Md. 444, 109 A. 141 (1919) ("suggesting" that a preexisting right of way constituted an encumbrance); *Tri–State Properties, Inc. v. Middleman*, 238 Md. 41, 207 A.2d 499 (1965) (holding that a suit to determine zoning jurisdiction did not constitute an encumbrance); *Manor Real Estate Co. v. Joseph M. Zamoiski Co.*, 251 Md. 120, 246 A.2d 240 (1968) (holding that an unpaid utility benefit charge is an encumbrance); *Marathon Builders, Inc. v. Polinger*, 263 Md. 410, 283 A.2d 617 (1971) (holding that zoning is not an encumbrance)).[13]

 Beyond the similarities, there is an important difference between the two covenants against encumbrances. A *general* covenant against encumbrances, expressed either in the abbreviated form of § 2–111, or in the traditional common law forms, warrants that the land conveyed is absolutely free of encumbrances. Accordingly, the grantor is responsible to the grantee for *any* encumbrances created either by the grantor or his predecessors in title. The *special* covenant against encumbrances, expressed either in the abbreviated form of § 2–110, or in the traditional common law forms, warrants that the land conveyed is free of encumbrances

---

(3rd ed. 1975) (listing liens (including judgment liens, tax liens and mortgages), easements, running covenants and restrictions, profits à prendre, and estates or claims outstanding); Robert G. Natelson, *Modern Law of Deeds to Real Property* § 12.6 (1992) (listing mortgages, deeds of trust, other liens, easements, profits, divesting conditions, running covenants, dower, and certain equitable interests). *See also* 20 Am.Jur.2d *Covenants, Conditions, and Restrictions* §§ 81–96 (1965); 21 C.J.S. *Covenants* § 19 (1990).

**13.** To this list we would add *McKenrick v. Savings Bank of Baltimore*, 174 Md. 118, 197 A. 580 (1938); *Halle v. Newbold*, 69 Md. 265, 14 A. 662 (1888); (explaining the circumstances under which various covenants running with the land will be held to constitute encumbrances on the property); and *Baltimore Trust Co. v. Canton Corn Products Co.*, 140 Md. 557, 118 A. 139 (1922) (holding that limited duration storage of alcohol on less than 2% of the property did not constitute an encumbrance).

created by the grantor. Therefore, if a *special* covenant against encumbrances is given, a grantor will *not* be held liable for the acts of a predecessor in title who encumbered the property. It is clear from the text of the deeds, "[a]nd the parties of the first part [the Magraws] hereby covenant that *they* have not done or suffered to be done an act, matter or thing whatsoever, to encumber the property hereby conveyed" (emphasis added), that the Magraws gave Dillow a special covenant against encumbrances.[14]

## III.

We now turn to the two central questions presented in this case: is the property actually encumbered, and if so, did the Magraws create the encumbrance and thereby violate their covenant? We will answer yes to both questions.

Petitioners' claim that the status of ownership of the subject properties was unchanged by the improperly conducted redemption proceedings is not persuasive. In fact, everyone's rights in the land were modified.

### A. James Magraw

Prior to the tax sale, James owned an undivided ⅝ interest in the property. That interest was clouded by the tax sale, and he retains two distinct groups of interests: those rights he obtained as a tax sale purchaser, and those rights he retains as the previous owner.[15]

██ As a tax sale purchaser, James Magraw is the holder of a tax sale certificate, § 83, and has the right to institute foreclosure proceedings to take title to the property, § 100.

---

14. Contrary to the assertions of the petitioners, it is abundantly clear that Judge Alpert, and the Court of Special Appeals, recognized the difference between a special and a general covenant, and recognized that the covenant at issue in this case was a special covenant against encumbrances. *Dillow v. Magraw*, 102 Md.App. 343, 373–74, 649 A.2d 1157, 1172 (1994).

15. Md.Code (1957, 1980 Repl.Vol.), Art. 81, § 92.

"The interest of a tax sale purchaser is ... that of a lien against the property which, through the process of foreclosure, ripens into title." *Voge v. Olin,* 69 Md.App. 508, 522, 518 A.2d 474, 481 (1986) (*citing Prince George's Homes, Inc. v. Cahn,* 283 Md. 76, 85, 389 A.2d 853, 857 (1978); *Stewart v. Wheatley,* 182 Md. 455, 458, 35 A.2d 104, 106 (1943)). We have also analogized the rights of a tax sale holder to a mortgagee. *Hardisty v. Kay,* 268 Md. 202, 212, 299 A.2d 771, 776 (1973). In this way, the tax sale purchaser holds an inchoate right of ownership, which vests upon successful foreclosure.

In his other capacity, as the previous owner, James Magraw holds the statutory right of possession granted by § 95 and the statutory right of redemption under § 92. These rights that James holds after tax sale are qualitatively different from those that he held prior to the tax sale. His possessory rights in the property are no longer the natural consequence flowing from his ownership of the property, but are a privilege granted by § 95, and are subject to the appointment of a receiver. The right of redemption after tax sale also differs from the right to discharge a tax obligation that exists prior to tax sale. Before tax sale, James could have discharged his tax obligation with a payment to Cecil County of the taxes owed, interest and penalties. After tax sale, James must use the redemption procedure outlined in § 93, first paying the county tax collector the whole amount of money received by the collector (the purchase price of the property), and interest on that amount, plus any subsequent taxes that have accrued. James Magraw's rights in this property are thus modified because the right of redemption he now holds is different than the right of discharge he held before tax sale.

### B. Deborah Magraw

Deborah Magraw, who had no ownership interest before the tax sale, now holds rights identical to those rights her husband holds as a tax sale purchaser.

### C. The Heirs of Helen Squires

Finally, the rights of the heirs of Helen Squires are modified. Previously they held between them an undivided ⅙ interest in the property. By operation of the tax sale, their rights as owners of the undivided ⅙ interest includes a right to redeem pursuant to § 92.

Under § 92,

"[t]he owner or other person having an estate or interest in the property sold by the collector may redeem the said property at any time until the right of redemption has been finally foreclosed under the provisions of this subtitle, by paying to the collector the amount required for redemption...."

The amount required for redemption and paid to the collector is "the whole amount of money received by such collector from the sale of the property, together with interest...." § 93. If the property has been purchased by a party other than a county

"there shall be added to the amount required for redemption any taxes, together with interest and penalties thereon accruing subsequent to the date of sale which have been actually paid by the holder of the certificate of sale ... and the total disbursements of the holder of the certificate of sale ... made in accordance with the provisions of [the Tax Sales] subtitle."

*Id.* Thus, the redemption amount required to be paid by a person having an interest in the property, where the county did not buy in at tax sale, includes all of the taxes, interest, and penalty assessed against the property from and after the original tax delinquency.

It follows that redemption benefits all interests in the property, and that the heirs could not redeem simply their ⅙th interest. Accordingly, if redemption is effected by one tenant in common prior to foreclosure of the right of redemption, the legal title to the property would not be changed, and the tenant who paid the full taxes would have a right to contribution. It is not until entry of a valid final decree of foreclosure

of the right of redemption that there "vest[s] in the plaintiff [*i.e.*, the holder of the tax sale certificate] an absolute and indefeasible title in fee simple in the property." § 112.

Significantly, the heirs of Helen Squires may at any time petition the Circuit Court for Cecil County to set aside the final decree foreclosing their right of redemption. That petition will have merit because a right of redemption created in a tax sale exists in perpetuity until such time as that right of redemption is foreclosed by a proper legal proceeding. *See Brashears v. Collison*, 207 Md. 339, 351–54, 115 A.2d 289, 295– 96 (1955) (holding that a right of redemption not barred by laches); *Heill v. Staniewski*, 265 Md. 722, 725, 291 A.2d 449, 451 (1972).

A right of redemption was thus created and continues to exist to this day. We must determine if this right of redemption is a sufficient burden on the property to constitute an encumbrance.

Our research of the Maryland cases, and those of our sister jurisdictions, discloses but a single reported decision on this point: *Roy v. F.M. Martin & Son*, 16 Ala.App. 650, 81 So. 142 (1919). The *Roy* Court stated simply, "We are of the opinion that the statutory right of redemption is an incumbrance on the land, within the meaning of the covenant against incumbrances, and that any effort on our part to further define the meaning of the term would be a work of supererogation." [16] *Roy*, 16 Ala.App. at 651, 81 So. at 143. While we agree with the result of the *Roy* Court, its failure to justify its result requires us to search elsewhere. We therefore undertake to review the Maryland cases on encumbrances.

In *Levine v. Hull*, 135 Md. 444, 109 A. 141 (1919), this Court had occasion to determine if a right of way across the deeded property violated a covenant against encumbrances. The Court was unable to reach the question because it was unable

---

**16.** "Supererogation" is the "act or process or an instance of performing more than is required by duty or obligation." *Webster's Unabridged Dictionary* (3rd ed. 1976).

to determine when the right of way was established. Nonetheless, the case makes clear that if the right of way existed prior to the conveyance, it would constitute an encumbrance. *Id.* at 446–47, 109 A. at 142.

Covenants running with the land have also been determined to be encumbrances on title:

> "It is settled law that restrictions which limit the use which an owner may make of his land are incumbrances which are inconsistent with an absolute and unfettered title thereto, and that one who agreed to purchase land upon the condition that the vendor convey to him a good and merchantable title is not, unless he had notice of them when the contract was made, required to accept a title burdened with restrictions."

*McKenrick v. Savings Bank of Baltimore,* 174 Md. 118, 120, 197 A. 580, 581 (1938). *See also Halle v. Newbold,* 69 Md. 265, 271, 14 A. 662, 664 (1888).

An unpaid utility benefit charge was held to constitute an encumbrance in *Manor Real Estate Co. v. Joseph M. Zamoiski, Co.,* 251 Md. 120, 246 A.2d 240 (1968), despite the fact that it was not yet due. "[P]resent liability [for] an eventual lien may be sufficient to establish an encumbrance." *Id.* at 130, 246 A.2d 240. The Court of Special Appeals correctly limited this holding in *Strass v. District–Realty Title Ins. Corp.,* 31 Md.App. 690, 704, 358 A.2d 251, 258 (1976), to present and not future liabilities.

By contrast, we have found zoning not to constitute an encumbrance. *Marathon Builders, Inc. v. Polinger,* 263 Md. 410, 283 A.2d 617 (1971). We have also held that a suit to determine the appropriate agency to zone a property is not an encumbrance. *Tri–State Properties, Inc. v. Middleman,* 238 Md. 41, 207 A.2d 499 (1965).

This Court has also held that "the transient storage of alcohol" occupying less than 2% of the space in a warehouse

did not constitute an encumbrance. *Baltimore Trust Co. v. Canton Corn Products Co.*, 140 Md. 557, 118 A. 139 (1922).[17]

■ Our survey of the relevant Maryland case law discloses six factors[18] which have been given weight when determining if a cloud on title constitutes an encumbrance. Those factors are:

1) **A right or interest in land;**

2) **subsisting in a third party;**[19]

3) **diminishing the value of the property purchased;**

4) **but not so much that the grantee received no title at all;**[20]

---

**17.** In *Canton Corn Products* our predecessors were particularly influenced by the fact that the appellee had substantial notice of the existence of the alcohol in the warehouse. It is not clear that without the notice, the result would have been the same.

**18.** Maryland law is unclear on what is potentially a seventh factor: if the covenantee's knowledge of an encumbrance is sufficient to indicate that the encumbrance was not intended by the parties to be covered by the covenant. *See Janes v. Jenkins*, 34 Md. 1, 11 (1871) (knowledge of encumbrance excepts the encumbrance from covenant); *accord Baltimore Trust Co. v. Canton Corn Products Co.*, 140 Md. 557, 118 A. 139 (1922); *accord Marathon Builders, Inc. v. Polinger*, 263 Md. 410, 417, 283 A.2d 617, 621 (1971). *But see Bryant v. Wilson*, 71 Md. 440, 18 A. 916 (1889) (knowledge irrelevant); *accord* Eli Frank, *Title to Real and Leasehold Estates and Liens* (1912) 98. Because there is no evidence in the record that Dillow had any knowledge of the status of the title, we need not decide the issue.

**19.** Many formulations provide "which *may* subsist in third persons...." *See, e.g., Prescott v. Trueman*, 4 Mass. 627, 629, 3 Am.Dec. 246, 247 (1808) (emphasis added). This does not mean that the right may exist alternatively in the first party (the covenantor), the second party (the covenantee), or in a third party. Rather, it means if an encumbrance exists, it exists in the third party. To alleviate this confusion, we have dispensed with the word "may."

**20.** The first four factors are the classic formulation of an encumbrance. *Marathon Builders, Inc. v. Polinger*, 263 Md. 410, 416, 283 A.2d 617, 621 (1971). In *Marathon Builders* we attributed these elements to Judge Eli Frank. Similar formulations may be found nationwide. A good example is *Tuskegee Land & Security Co. v. Birmingham Realty Co.*, 161 Ala. 542, 556, 49 So. 378, 382 (1909) (*citing Prescott v. Trueman*, 4 Mass. 627, 629, 3 Am.Dec. 246, 247 (1808)). In *Levine v.*

5) **but must have preexisted the contract of sale [21] and be breached, if at all, at the time of conveyance; [22] and**

6) **the subject property must be in the hands of the covenantee and not a remote purchaser.[23]**

■ We apply the factors to the facts of this case. The right of redemption is a "right or interest in land." Not every "right or interest" necessarily rises to the level of an encumbrance. This element requires a subjective judgment as to the "degree" of encumbrance. To make the determination we have only the traditional method of common law development, reasoning by analogy, to guide us. We find that a right of redemption is more similar to an easement, lien, or the like, than it is to zoning or a suit to determine zoning jurisdiction.

---

*Hull*, 135 Md. 444, 446, 109 A. 141, 142 (1919), we cited *Huyck v. Andrews*, 113 N.Y. 81, 85, 20 N.E. 581, 582 (1889) for the same proposition. *See also Proffitt v. Isley*, 13 Ark.App. 281, 283, 683 S.W.2d 243, 244 (1985); *Aczas v. Stuart Heights, Inc.*, 154 Conn. 54, 60, 221 A.2d 589, 593 (1966); *Gore v. General Properties Corp.*, 149 Fla. 690, 696, 6 So.2d 837, 839–40 (1942); *Monti v. Tangora*, 99 Ill.App.3d 575, 580, 54 Ill.Dec. 732, 737, 425 N.E.2d 597, 602 (1981); *First Unitarian Society of Iowa City v. Citizens Savings & Trust Co.*, 162 Iowa 389, 391, 142 N.W. 87, 88 (1913); *Shunk v. Fuller*, 118 Kan. 682, 687, 236 P. 449, 451 (1925); *Young v. Thendara, Inc.*, 328 Mich. 42, 51, 43 N.W.2d 58, 62 (1950); *State v. Anderson*, 159 Minn. 245, 250, 199 N.W. 6, 8 (1924); *State ex rel. Malott v. Board of Commissioners of Cascade County*, 89 Mont. 37, 79, 296 P. 1, 12–13 (1931); *Minez v. Kromocolor, Inc.*, 125 N.J.Eq. 439, 440, 7 A.2d 404, 405 (1937); *Tenbusch v. L.K.N. Realty Co.*, 107 Ohio App. 133, 136, 149 N.E.2d 42, 46 (1958); *Ritter v. Hill*, 282 Pa. 115, 118, 127 A. 455, 456 (1925); *Amos v. Carson*, 186 Tenn. 393, 399, 210 S.W.2d 677, 679 (1948); *City of Beaumont v. Moore*, 146 Tex. 46, 55, 202 S.W.2d 448, 453 (1947); *Olcott v. Southworth*, 115 Vt. 421, 424, 63 A.2d 189, 191 (1949); *Hebb v. Severson*, 32 Wash.2d 159, 167, 201 P.2d 156, 160 (1948).

21. *Levine v. Hull*, 135 Md. 444, 447, 109 A. 141, 142 (1919).

22. *Marathon Builders, Inc. v. Polinger*, 263 Md. 410, 414, 283 A.2d 617, 620 (1971).

23. *Levine v. Hull*, 135 Md. 444, 447, 109 A. 141, 142 (1919) ("Upon one point all the authorities seem to be in harmony, namely, that a covenant against encumbrances is not a covenant running with the land, but in the nature of a personal covenant. . . .").

The right of redemption exists in a third party, here the heirs of Helen Squires. By third party it is simply meant that the right exists in someone other than the covenantor or the covenantee. The third person may be an individual, a group of individuals, a corporation, or any other group capable of holding property.

The third factor, the diminution of the value of the estate Mr. Dillow purchased, is obvious. He owns an undivided ⅚ share of the estate, rather than the entirety for which he bargained. Dillow has been unable to secure additional financing and will be unable to sell the parcels he has improved.

The fourth factor, that the diminution of the value has not rendered the vendor without title whatsoever, serves merely to distinguish an encumbrance from a failure of seisin. The Magraws did have some aspects of ownership to transfer, namely their rights as tax sale purchasers and James' right of redemption.

The time sequence, listed as the fifth factor, is clearly met in this case. The interest of the heirs of Helen Squires predates the Magraws' ownership, and the creation of the right of redemption in the heirs predates the contract of sale. Moreover, it is not alleged that any acts subsequent to the conveyance created this encumbrance.

Factor six is satisfied because the plaintiff here is Dillow, the covenantee, rather than a remote purchaser. A remote purchaser from Dillow cannot reap the benefit of the covenant because a covenant against encumbrances, unless the parties have contracted otherwise, does not run with the land. *Levine v. Hull,* 135 Md. 444, 447, 109 A. 141, 142 (1919).

Because all of the factors are met in the instant case, we hold that the right to redeem that exists in the heirs of Helen Squires continues unabated and is an encumbrance on the property.

The Magraws, the covenantors, by their own acts, encumbered the property. James allowed the real estate taxes to lapse. He let the property go to tax sale in an

attempt to acquire clear title. He had the option of forcing a sale through partition, but this method would have required him to notify the heirs of Helen Squires, and run the risk of someone outbidding him for the property. Instead, the Magraws attempted to use the tax sale procedure. This had the effect of creating the right of redemption in the heirs of Helen Squires. The Magraws then instituted the foreclosure proceedings, which resulted in a decree, and a deed from the treasurer of Cecil County, ostensibly vesting fee simple title in the property in James S. and Deborah L. Magraw. It is that title, acquired in foreclosure, that the Magraws sought to convey to Dillow.

The encumbrance on that title existing by virtue of the continuing possibility that the heirs may appear and meritoriously assert their right to redeem is not an encumbrance that preexisted the foreclosure proceeding. A redemption effected before foreclosure would not have affected the title held by James and the heirs. A redemption by the heirs after an ineffective foreclosure, however, would have to be, under § 92, a redemption of all of the fee simple interest. Such a redemption would restore, at least equitably, the title to the heirs and to James, as tenants in common, thus encumbering the foreclosure title of James and Deborah as tenants by the entireties. *Chavez v. Chavez*, 56 N.M. 393, 396, 244 P.2d 781, 782 (1952) ("[i]t is a well settled principle of law that a redemption from a tax sale by one cotenant operates as a redemption for all cotenants"); *Kuklo v. Starr*, 660 So.2d 979, 979 (1995); *Truver v. Kennedy*, 425 Pa. 294, 302, 229 A.2d 468, 472 (1967); *Poenisch v. Quarnstrom*, 361 S.W.2d 367, 372 (1962).

Because James and Deborah created the defect in the foreclosure proceeding that produces the encumbrance on the property, they have "committed the very act they covenanted against." *Dillow*, 102 Md.App. at 374, 649 A.2d at 1172.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED WITH DIRECTIONS TO REMAND THE CASE TO THE CIRCUIT COURT FOR CECIL COUNTY FOR FURTHER PROCEEDINGS CONSISTENT WITH*

*THIS OPINION. COSTS IN THIS COURT TO BE PAID BY PETITIONERS.*