Whether a restrictive covenant prohibits an intended use of land depends on the language of the covenant and the intention of parties in using such language. Kern v. Murph (1936), 4 Ohio Supp. 356, 6 O.O. 223. The intentions of the parties are ascertained by considering the covenant within the context of the entire document, the circumstances surrounding the drafting of the covenant, and the subject matter of the covenant. Slife v. Kundtz
(1974), 40 Ohio App.2d 179, 69 O.O.2d 178, 318 N.E.2d 557; Hi-LoOil Co., Inc. v. McCollum (1987), 38 Ohio App.3d 12,526 N.E.2d 90. Thus, although courts are to ascribe the plain and ordinary meaning to the language of the covenant, Benner, supra, that meaning should be consistent with the parties' intentions.
I agree with the trial court that these restrictive covenants are ambiguous, and, thus, decline to adopt the Alabama Supreme Court's analysis in Spygley. The ambiguity in these covenants becomes apparent when one compares the express language of those provisions with the usual purposes of those provisions. We are able to discern the usual purposes of these provisions from case law on restrictive covenants because language similar to the language used in these covenants is commonly included in subdivision plats.
Although the second sentence in restrictive covenant number one seems to absolutely prohibit the erection of any buildings other than one single family dwelling, the purpose of this provision is usually to restrict the number and types of primary
buildings that may be erected on the lots. In particular, this provision is generally used to prohibit the building of multi-unit family dwellings, such as, apartments and duplexes. See, Baker v.Lunde (Conn. 1921), 114 A. 673. Similarly, this provision is commonly used to prohibit the building of more than one home on each lot. See, Walker v. Haslett (Ill.App. 1919), 38 N.E.2d 53. Hence, although the explicit language of the covenant appears to restrict the erection of any building whether it be primary or accessory, its usual purpose indicates that the provision was only intended to be directed at the construction of primary buildings.
A review of the usual purpose of restrictive covenant number four serves to fortify this ambiguity. Usually, language similar to that used in restrictive covenant number four is employed to limit the occupancy of lots in a subdivision to single families. Language similar to that in restrictive covenant four serves to limit the occupancy of lots to single families by prohibiting lot owners from renting out or permitting extended family or friends to live in the lot owner's basement, garage, barn, or other buildings. Hence, in summary, the purpose of this covenant is to attempt to restrict the occupancy of lots in a subdivision to single families by requiring that all individuals living on the lot reside within the one permitted single family dwelling.
In view of the usual purpose of this covenant, the ambiguity in restrictive covenant number one is reinforced because if the restrictive covenant number one's express (and seemingly inclusive) prohibition against the erection of other buildings was intended to apply to barns and outbuildings, there would be no need for restrictive covenant number four to prohibit individuals from residing in those buildings. Thus, I can only conclude that the trial court correctly found that restrictive covenant number one is ambiguous. Furthermore, I would determine that upon finding the ambiguity, the trial court properly interpreted the covenant as not restricting the Dunlavys' use of their land.
This holding is consistent with a prior opinion authored by this court. In Mays v. Noble (July 6, 1987), Montgomery App. No. 10330, unreported, we held that two similar covenants in a subdivision plat were ambiguous. Those covenants provided:
 All lots in this plot shall be known and described as residential lots. No structure shall be erected, altered, placed, or permitted to remain on any residential lot other than one detached single family dwelling not to exceed two stories in height and a private garage for not more than three cars.
 No trailer, tent, shack, garage, barn, or other out-buildings erected in the subdivision shall at any time be used as a residence temporarily or permanently, nor shall any structure of a temporary nature be used as a residence.
Id. at 3. We found that the covenants were ambiguous because the first covenant seemed to prohibit all structures except one single family dwelling while the latter covenant appeared to acknowledge by implication that such structures were permitted, but could not be used for residential purposes. Finding an ambiguity, we interpreted the covenants in favor of the property owner's free use of his land.
I find no material difference between the covenants in Mays,supra, and those in the present case. Particularly in legal issues involving the use of real property we should be very cognizant of the need for consistency in the application of the law. Precedents such as the one this court itself established inMays are necessarily relied upon by the practitioners in real property law and should not be overturned merely because a later panel of the same court prefers a different line of reasoning. In any case, I remain convinced by our reasoning in Mays. I would overrule the assignment of error and affirm the judgment of the trial court.
Copies mailed to:
William B. McNeil
John E. Fulker
Hon. Jeffrey M. Welbaum