AMERICAN SURETY COMPANY, a corporation, Plaintiff,

v.

Herman MORTON, Aaron Karchmer and Charles Gross, Defendants and Third-Party Plaintiffs,

v.

R. F. NIBLO, R. F. Niblo, Inc., a corporation, and the Travelers Indemnity Company, a corporation, Third-Party Defendants.

Civ. A. No. 3784.

United States District Court
E. D. Illinois.
Dec. 22, 1961.

See also D.C., 22 F.R.D. 261.

Wham & Wham, Centralia, Ill., for plaintiff American Surety Co.

Hugh V. Murray, Jr., Centralia, Ill., for defendant-third-party plaintiff Aaron Karchmer.

Joseph H. Goldenhersh, East St. Louis, Ill., for defendants and third-party plaintiffs Herman Morton and Charles Gross.

Craig & Craig, Mount Vernon, Ill., for the Travelers Indemnity Co., third-party defendant.

Harold H. Pennock, Jr., Centralia, Ill., for R. F. Niblo, third-party defendant.

R. F. Niblo, Inc., third-party defendant, not represented.

JUERGENS, District Judge.

Plaintiff is a New York corporation with its principal place of business in New York City, and each of the defendants is a citizen and resident of the State of Illinois. The amount in controversy fairly exceeds the sum of $3,000.00, exclusive of interest and costs, and the cause was commenced on April 1, 1957. Third-party defendant R. F. Niblo is a citizen and resident of the State of Illinois; third-party defendant The Travelers Indemnity Company is a Connecticut corporation organized to transact business in the State of Illinois; and third-party defendant R. F. Niblo, Inc., is an Illinois corporation.

R. F. Niblo, Inc., for more than ten years prior to December 20, 1954, and thereafter until July 1, 1956, was the duly appointed and acting agent of The Travelers Insurance Company, The Travelers Life Insurance Company and The Travelers Indemnity Company (hereinafter referred to as "Travelers") for the sale and issuance of insurance policies and bonds of indemnity within

the City of Centralia, Illinois, and vicinity, including the collection of premiums or charges therefor.

During the period of approximately eight months prior to December 20, 1954, R. F. Niblo, Inc., was unable to satisfy its financial obligations, including delinquent premium balances due and owing Travelers in the amount of $3,763.78; a promissory note of R. F. Niblo, Inc., R. F. Niblo and Aaron Karchmer payable to the order of The Old National Bank of Centralia in the principal sum of $8,500.00; a promissory note of R. F. Niblo, Inc., R. F. Niblo and Herman Morton payable in the principal sum of $3,000.00; and a promissory note of R. F. Niblo, Inc., R. F. Niblo, Herman Morton and Charles Gross likewise payable in the principal sum of $2,500.00; which promissory notes had been executed by the respective defendants Herman Morton, Aaron Karchmer and Charles Gross wholly as accommodation co-makers and at the request of the third-party defendant R. F. Niblo.

Travelers were proposing cancelation of their agency contracts with R. F. Niblo, Inc., for the reason of the failure to remit the delinquent premium balances and the failure to regularly account for and remit premium balances within the prescribed period of forty-five days from the month of issuance of the respective bonds and policies of insurance.

The proposed cancelations of the agency contracts were deferred from time to time at the request of third-party defendants R. F. Niblo and R. F. Niblo, Inc., and defendants Herman Morton, Aaron Karchmer and Charles Gross in cooperation with their efforts to obtain a satisfactory sale, refinancing or reorganization of the R. F. Niblo, Inc., business.

During the month of November, 1954, Travelers offered to withhold termination of the agency contracts and continue R. F. Niblo, Inc., as their duly authorized agent, provided R. F. Niblo, Inc., pay the $3,763.78 delinquent premium balances and further provided that defendants Herman Morton, Aaron Karchmer and Charles Gross, jointly and severally, guarantee the payment of any and all sums then or thereafter owing Travelers on account of insurance or bonds issued by or through R. F. Niblo or R. F. Niblo, Inc., and further provided that said defendants would become and serve as members of a five man board of directors for the future control and operation of R. F. Niblo, Inc., and its business.

On or about December 10, 1954, R. F. Niblo, Inc., made payment of $3,763.78 delinquent premium balance and in addition all other premium account balances payable to The Travelers Companies as of November 1, 1954.

On December 20, 1954, the board of directors of R. F. Niblo, Inc., was increased from three to five in number and thereafter at all times herein pertinent the directors and respective officers of the corporation were as follows:

R. F. Niblo, Director and President

Aaron Karchmer, Director and Vice President

Herman Morton, Director and Secretary

N. W. Niblo, Director and Assistant Secretary

Charles H. Gross, Director and Treasurer.

The Old National Bank of Centralia, Centralia, Illinois, was designated the sole depository for funds of R. F. Niblo, Inc., and by action of the board of directors on December 20, 1954, it was provided that all checks, drafts, or other orders for the payment of money, notes, or other evidences of indebtedness, issued in the name of the corporation, should be signed by the treasurer or the president and counter-signed by the secretary or vice president.

On the same day defendants Herman Morton, Aaron Karchmer and Charles Gross made, executed and delivered to Travelers the following instrument in writing:

"For valuable consideration, the receipt and sufficiency thereof be-

ing hereby acknowledged, we, the undersigned, do hereby jointly and severally guarantee due payment of any and all sums now or hereafter owing The Travelers Insurance Company, The Travelers Indemnity Company and/or The Travelers Fire Insurance Company on account of Bonds or Indemnity and/or insurance of every kind, character and description, heretofore or hereafter sold or issued by or through R. F. Niblo or the R. F. Niblo, Inc. Agency, both of Centralia, Illinois.

"It is understood that all premium balances are to be remitted not later than 45 days from the month of issuance of said respective bonds and policies of insurance.

"This guarantee shall continue in full force and effect for the period of one year from the date hereof and thereafter until terminated by notice, in writing, not less than sixty days prior to the effective date thereof."

Thereupon Travelers withheld termination of the agency contracts and continued R. F. Niblo, Inc., as their duly authorized agent.

During the early part of 1956 R. F. Niblo, Inc., failed to remit premium balances due Travelers within the period of forty-five days from the month of issuance of their respective bonds and policies of insurance; and in May, 1956, the delinquent balances so due and owing by R. F. Niblo, Inc., aggregated the sum of $5,812.99. On or about May 16, 1956, Travelers delivered a letter to each of the defendants, wherein it was stated that the agency had become delinquent and indicated the net amounts necessary to bring the accounts up to date in accordance with the agreement entered into in December, 1954, and that R. F. Niblo had informed the company of his inability to remit the premiums due to lack of funds and demand was made of the defendants as co-signers of the indemnification agreement dated December 20, 1954, for immediate payment of balances due Travelers, pointing out that it was necessary for them to receive the amount due promptly in order to clear the delinquency with the home office.

The defendants failed and refused to satisfy the delinquent premium balances or to make any payment on the account.

On June 25, 1956, by reason of the continued failure to account for and remit premium balances and following due notice and demand, Travelers canceled their respective agency contracts with R. F. Niblo, Inc.

R. F. Niblo, Inc., became indebted to Travelers and failed to remit premium balances aggregating $7,773.09 on account of insurance policies and indemnity bonds sold and issued during the year 1956, prior to the cancelation of the agency contracts.

The sum of $7,773.09 accrued and became due and owing prior to termination, by notice in writing or otherwise, of the relationship created and evidenced by the above-described letter of December 20, 1954, from the defendants to the Travelers Companies.

R. F. Niblo, Inc., made collection of premiums chargeable on account of insurance policies and bonds; and all sums so collected were deposited in the R. F. Niblo, Inc., account with The Old National Bank of Centralia, Centralia, Illinois, and were thereafter withdrawn through checks of R. F. Niblo, Inc., signed by R. F. Niblo as president and signed also by defendant Herman Morton as secretary and/or Charles Gross as treasurer.

At all times here involved there was in force and effect a "primary commercial blanket bond" No. 14–500–930 of plaintiff American Surety Company, issued to The Travelers Insurance Company, The Travelers Indemnity Company, The Travelers Fire Insurance Company and The Charter Oak Fire Insurance Company.

The primary commercial blanket bond provided coverage for "any fraudulent or dishonest act or acts" committed by

agents of The Travelers Insurance Company, The Travelers Indemnity Company, The Travelers Fire Insurance Company and The Charter Oak Fire Insurance Company, it being understood by and between the parties thereto that such coverage included an agent's failure to remit the company's share of a collected premium without regard to whether the failure was in violation of a criminal law.

American Surety Company, as surety under the primary commercial bond was informed by Travelers of the delinquent premium balances owed by R. F. Niblo, Inc., in December of 1954 and had full knowledge of and consented to the hereinabove described arrangement whereby The Travelers Companies withheld cancelation of their existing agency contracts with R. F. Niblo, Inc.

On or about September 19, 1956, Travelers made claim under the primary blanket bond, and during the month of October, 1956, plaintiff paid Travelers the aggregate sum of $7,773.-09 in payment of the claim and in return received an instrument of assignment which provides as follows:

"Know All Men By These Presents, That the Travelers Insurance Company, The Travelers Indemnity Company, and The Travelers Fire Insurance Company, each a corporation of the State of Connecticut (hereinafter called Assignors) for and in consideration of Seven Thousand Seven Hundred Seventy-three Dollars and nine Cents ($7773.09) cash in hand paid by American Surety Company of New York, a corporation of the State of New York (hereinafter called Assignee) the receipt whereof is acknowledged, do hereby sell, assign, transfer and set over unto the Assignee, its successors or assigns, all claims, demands, rights, cause or causes of action against R. F. Niblo, Inc., an Illinois corporation, R. F. Niblo, Aaron Karchmer, Herman E. Morton, Charles Gross, and each of them, accrued, accruing or hereafter to accrue unto Assignors, and any of them, by virtue of or incidental to any transaction which has occurred prior to the date hereof, including all sums due and owing by the said R. F. Niblo, Inc. R. F. Niblo, Aaron Karchmer, Herman E. Morton, Charles Gross, and each of them, on account of bonds of indemnity and/or insurance of every kind, character and description sold or issued by or through R. F. Niblo or R. F. Niblo, Inc., all unpaid premium balances and all sums due and owing by or collectible from the said Aaron Karchmer, Herman E. Morton and Charles Gross, pursuant to their agreement and guarantee as evidenced by instrument or letter addressed to The Travelers, Pierce Building, St. Louis 2, Missouri, under date of to-wit, December 20, 1954, together with all insurance policy expirations, daily reports or records, liens, securities, rights, titles or interests pertaining thereto or obtained in connection therewith and, also, the right to sue thereon or therefor in its own name or in the respective names of the parties Assignor.

"In Witness Whereof the Assignors have caused their corporate names and seals to be hereunto set and affixed by their duly authorized officers this ——— day of October, A. D. 1956."

After the allowance of all proper credits and set-offs had been deducted from the original sum of $7,773.09, there remained the sum of $6,126.94, which the defendants have failed and refused to pay in whole or in part although requested to do so.

The plaintiff contends that having paid Travelers under the primary commercial blanket bond and having received an assignment of Travelers' claims against the defendants, they are now entitled to recover from the defendants for the loss which they were required to pay under the primary commercial blanket bond and that by virtue

of the assignment from Travelers they are entitled to bring this action the same as though it were brought by Travelers in their own name and further that notwithstanding the assignment they are entitled to subrogation from the defendants.

The right of subrogation is a creature of equity, applicable where one person is required to pay a debt for which another is primarily responsible and which the latter should in equity discharge. In theory one person is substituted to the claim of another, but only when the equities as between the parties are in favor of the plaintiff. A surety's right of recovery from a third party through subrogation does not follow as a matter of course upon proof that the losing but recompensed party could have recovered from the third party. Subrogation will not operate against an innocent person wronged by a principal's fraud. A surety may pursue the independent right of action of the original creditor against a third person, but it must appear that the third person participated in the wrongful act involved or that he was negligent, for the right to recover from a third person is merely conditional in contrast to the right to recover from the principal, which is absolute. The equities of one asking for subrogation must be superior to those of his adversary. If the equities are equal or if the equities preponderate in favor of the defendant, subrogation will not be applied to shift the loss.

These basic principles have been consistently followed in determining rights of subrogation and are clearly supported by the majority of reported decisions. Cases, dealing with surety's alleged right of subrogation to the claim of the original creditor against a third party with whom the indemnitor is not in privity, indicate that the result reached depends on a careful analysis of the facts involved, and, if insurers have no right to subrogation, their position is not improved by an assignment to them of the insured's claim against third parties. American Surety Co. v. Bank of California, 9 Cir., 1943, 133 F.2d 160.

Subrogation is an equitable remedy, and, while a surety may become subrogated to the rights and remedies of the creditor against a third person, he stands, with respect to the right of recovery against a third person, upon a different footing from that upon which he would stand with respect to the right to recover from a principal. With respect to recovery from a principal, the right is absolute; as to a third person, it is conditional. Since subrogation seeks to place the charge where it ought to rest by compelling payment by him who in equity owes it, such right generally will not be enforced against a third person where the equities of the third person are equal or superior to those of the surety in respect to the liability. United States Fidelity & Guaranty Co. v. First National Bank in Dallas, 5 Cir., 1949, 172 F.2d 258.

Travelers could have pursued their remedy against the defendants on their guarantee to Travelers dated December 20, 1954. Travelers also possessed the right to proceed against the American Surety Company, which it elected to do. Having elected to pursue its remedy against one of the sureties or guarantors and having received payment in full from that surety or guarantor, it was then precluded from asserting a second claim against the other surety or guarantor against whom it had elected not to proceed and its right as against such other surety or guarantor was destroyed, as it would not be permitted a dual recovery. American Surety Co. v. Bank of California, 9 Cir., 1943, 133 F.2d 160.

Since Travelers recovered from the American Surety Company, it was thereby made whole. Having been made whole, it had no further claim against the defendants. Since it had no further claim against the defendants, it had nothing it could assign to the plaintiff.

88

Plaintiff argues that it cannot be reasonably contended that there are any substantial equities in favor of the defendants Morton, Karchmer and Gross, who (a) endorsed the arrangement so as to keep the agency business and to thereby avoid personal loss on account of the bank notes; (b) personally guaranteed payment of premium balances; (c) took right of control of R. F. Niblo, Inc., through majority members of its board of directors; (d) had control of agency receipts and disbursements; and (e) through acts and/or failures to act permitted the delinquent balances and loss here involved.

The plaintiff apparently overlooks the rule of law which is that when the equities are equal then no right of subrogation exists. Apparently plaintiff is of the opinion that only when the equities preponderate in favor of the defendant, subrogation would not be proper. Such is not the law. When it is sought to exercise the right of subrogation, something more must be shown than that the defendant could have been compelled by the principal creditor to pay the debt to it. It must appear that as between complainant and respondent, it is the latter and not the former which in equity should bear the loss. United States Fidelity & Guaranty Co. v. United States Title Guaranty & Surety Co., D. C., 200 F. 443.

█ The plaintiff voluntarily and for compensation guaranteed against loss in the exact sense here involved. There has been no showing that the defendants participated in wrongdoing, negligence or such knowledge as would place them in any different equitable position than that enjoyed by plaintiff. Plaintiff argues that defendants received a consideration for the guarantee agreement entered into between them and Travelers. This is no argument in favor of plaintiff's position since plaintiff likewise received compensation for entering into the bond. It accepted the responsibility for such loss for compensation, the premium paid to them, which they have retained.

The Court finds that at best the equities in this case are equal and, accordingly, plaintiff has no right of subrogation against these defendants and further finds that the assignment does not in any way enlarge the rights of the plaintiff.

The Court, therefore, finds that judgment in this cause should be entered in favor of the defendants and against the plaintiff.

The demands of the third-party complaint are no longer for consideration since the issues of the complaint were found in favor of the defendants and third-party plaintiffs and against the plaintiff, American Surety Company.