No. 2--05--0853                                        filed 6/7/06

_____

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_____

_____

| | | |
|---|---|---|
| MIDFIRST BANK, | ) | Appeal from the Circuit Court |
| | ) | of Winnebago County |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 01--CH--227 |
| | ) | |
| RODNEY G. ABNEY II, | ) | |
| | ) | |
| Defendant and Counterplaintiff | ) | |
| | ) | |
| (David C. McCourt, Marena E. Abney, | ) | |
| Meritage Mortgage Corporation, Unknown | ) | |
| Owners, and Nonrecord Claimants, | ) | |
| Defendants; Lawyers Title Insurance | ) | |
| Corporation, as Subrogee of Rodney G. | ) | |
| Abney II, Counterplaintiff-Appellee; David | ) | |
| Forshay, Defendant and Counterdefendant | ) | |
| and Third-Party Plaintiff-Appellant; Nations | ) | Honorable |
| Title Agency of Illinois, Inc., Third-Party | ) | Janet R. Holmgren, |
| Defendant-Appellee). | ) | Judge, Presiding. |

_____

_____

JUSTICE BYRNE delivered the opinion of the court:

Defendant, counterdefendant, and third-party plaintiff, David Forshay, bought property at a sheriff's foreclosure sale and then transferred the property to defendant and counterplaintiff, Rodney G. Abney II.  Forshay warranted in his warranty deed that the title was free and clear of encumbrances.  However, third-party defendant, Nations

Title Agency of Illinois, Inc., which performed the title search for the closing, failed to report that plaintiff, Midfirst Bank, had a priority lien on the property superior to Forshay's position. Midfirst filed a foreclosure suit against Rodney, Forshay, and defendants David C. McCourt, Marena E. Abney, Meritage Mortgage Corporation, unknown owners, and nonrecord claimants, and its motion for summary judgment against the Abneys and McCourt was subsequently granted. They do not appeal from this judgment. Rodney filed a counterclaim against Forshay for breach of a warranty of title in the deed conveying the property, which the trial court granted. Thereafter, the trial court entered a money judgment in favor of counterplaintiff Lawyers Title Insurance Corporation, which had underwritten the title insurance and had brought a claim as Rodney's subrogee against Forshay for monies paid out under the title insurance policy. Forshay then filed a third-party action against third-party defendant, Nations Title, seeking damages for negligent misrepresentation. At a bench trial, the trial court granted Nations Title's motion for a directed finding.

Forshay appeals, contending that the trial court erred in determining that (1) he was liable for a breach of warranty of title when Rodney was aware of and involved in the lien creating the defect in title; (2) he was liable to Lawyers Title for the amount of payments made to clear title when Lawyers Title's own agent, Nations Title, negligently failed to report the encumbrance creating the defect in title; and (3) he was not entitled to prevail on his claim for negligent misrepresentation against Nations Title and, in particular, that Nations Title was not in the business of supplying information to third parties, such as himself, so as to create liability for negligent misrepresentation.

Defendants McCourt, Marena, and Meritage Mortgage Corporation are not parties to the appeal. We affirm.

BACKGROUND

In 1986, McCourt placed a mortgage on property located at 1417 Van Stone Drive, Machesney Park, Illinois. This mortgage was assigned, through various assignments, to Midfirst. In 1987, McCourt transferred the property to Rodney. Rodney then transferred the property by way of a quit claim deed to Marena. Marena placed a second mortgage on the property with Bank United. On January 6, 2000, Bank United foreclosed on the second mortgage but did not name Midfirst as a party to that foreclosure.

Upon foreclosure of the Bank United mortgage, Forshay purchased the property at a sheriff's sale in September 2000. Forshay then sold the property by way of a warranty deed to Rodney on October 10, 2000. Despite the fact that Forshay warranted the property as free and clear of all encumbrances, the property was actually encumbered by the first mortgage held by Midfirst.

On March 20, 2001, Midfirst filed for foreclosure on the mortgage that encumbered the Machesney Park property and named as defendants Rodney, Marena, McCourt, Meritage Mortgage Corporation, Forshay, unknown owners, and nonrecord claimants.

Rodney filed an affidavit in which he averred that, prior to Forshay executing the warranty deed transferring the Machesney Park property to him, he was aware that Midfirst and its predecessors in interest held a mortgage on the property and that payments were being made on that mortgage. He also averred that, prior to the transfer of the property by Forshay, he was aware of the foreclosure action initiated by Bank United, which resulted in

Forshay purchasing the property. At the time Forshay transferred the property to Rodney by warranty deed, Rodney understood that Midfirst's mortgage was extinguished by Bank United's foreclosure. His understanding was based in part on Forshay's oral representation to him that it was Bank United's responsibility to take care of the Midfirst mortgage. Finally, Rodney swore that, based upon Forshay's representation concerning the Midfirst mortgage, it was clear to him that Forshay was aware of the existence of the Midfirst mortgage.

On August 8, 2001, Rodney filed a countercomplaint against Forshay for breach of warranty under the warranty deed. Rodney alleged that Forshay falsely warranted under the deed that the property was free and clear of all encumbrances when, in fact, the property was encumbered by a mortgage in favor of Rockford Mortgage Company, Inc., which was assigned through various assignments to Midfirst. Midfirst had initiated the proceedings to foreclose its mortgage and had asserted that at that time there was an unpaid balance owed to it under its mortgage in the amount of $31,465, plus interest, attorney fees, and costs. Rodney alleged that the existence of the mortgage in favor of Midfirst, which existed at the time of the execution of the warranty deed, constituted an encumbrance that Forshay warranted would not exist on the property and that Forshay had agreed to defend Rodney against. As a consequence, the existence of the mortgage constituted a breach of warranty by Forshay.

Forshay filed an affirmative defense in response, in which he alleged that Rodney had specific knowledge that there was a first mortgage on the property. Forshay asserted that Rodney's "knowledge in that regard defeats any claim that he has or may claim to have under the warranty deed."

On December 21, 2001, Forshay filed a third-party complaint against Nations Title for negligent misrepresentation. Forshay alleged that on or before he executed the warranty deed to Rodney, Forshay paid for and caused an inspection of the public records relating to the Machesney Park property to be performed by Nations Title and paid the sum of $575 to Nations Title for title insurance for Rodney. Forshay further alleged that, as part of their inspection of the public records relative to the real estate involved in the pending litigation, the abstractors for Nations Title negligently and improperly failed to discover and report to Forshay the mortgage in favor of Rockford Mortgage Company, Inc., and assigned through its various assignments to Midfirst. Forshay alleged that, because Nations Title is in the business of providing information to sellers, purchasers, and lenders, such as Forshay, upon which sellers, purchasers, and lenders rely in the ordinary course of their business and transactions, Nations Title owed a duty to Forshay to conduct its title abstract and search in a competent fashion and to locate and report the existence of the aforesaid first mortgage.

Nations Title filed an affirmative defense in response to Forshay's third-party complaint, arguing that there was no privity between Forshay and Nations Title and that Nations Title owed no duty to Forshay. Consequently no basis existed for Forshay's negligent misrepresentation claim against it.

Subsequently, on August 29, 2002, Rodney filed a motion for summary judgment on his countercomplaint against Forshay for breach of warranty. On March 17, 2003, the trial court, after hearing argument of counsel, granted Rodney's motion for summary judgment, finding that the warranty deed issued by Forshay included a covenant of good title that was

breached by the existence of the Midfirst mortgage. The court concluded that the law is well settled; that a purchaser such as Rodney may have had some knowledge of an encumbrance does not release or discharge the covenant contained in the warranty deed and, when a purchaser actually receives a covenant of title, the law allows him to enforce its performance and recover damages. Accordingly, the trial court entered summary judgment for breach of warranty in favor of Rodney on his countercomplaint against Forshay.

Thereafter, because Lawyers Title paid Midfirst's claim, the trial court allowed Lawyers Title leave to file an amended countercomplaint in order to subrogate to the rights of Rodney to bring the breach of warranty claim. Thereafter, the trial court entered judgment in favor of Lawyers Title and against Forshay in the amount of $47,478, plus costs.

In the interim, on October 18, 2002, Midfirst filed a motion for summary judgment against Rodney and Marena Abney. Subsequently, Midfirst filed a second motion for summary judgment adding McCourt. The trial court granted the motion for summary judgment brought by Midfirst against the Abneys and McCourt and held that there was no genuine issue of material fact that Midfirst had a valid mortgage and that there had been a breach of the terms of the mortgage authorizing the entry of judgment in the cause. Neither the Abneys nor McCourt appeal from this judgment.

On June 24, 2005, the parties appeared for trial on Forshay's third-party claim against Nations Title for negligent misrepresentation and presented the following relevant evidence. Forshay claimed that Nations Title negligently performed the title search for

Lawyers Title.  On January 6, 2000, Bank United filed the foreclosure case against Marena with respect to the Machesney Park property.  At that time, the mortgage that Bank United sought to foreclose was a second mortgage on the property.  Forshay purchased the property at the judicial foreclosure sale and, according to Forshay, he mistakenly believed that the foreclosure of the Bank United loan eliminated all other loans and liens and that he therefore owned the house free and clear.  The property was conveyed to Forshay on or about September 26, 2000.  Prior to accepting the judicial sale deed, however, Forshay failed to run a title search for the property and failed to purchase any title insurance for the property.

After purchasing the property, Forshay visited the residence to determine whether the occupant, Marena, was willing or able to either rent or buy the property.  Forshay met with Rodney and agreed to sell the property to him.  Forshay testified that Rodney, or someone on his behalf, prepared the written offer to purchase and presented it to Forshay for signature.

The closing on the sale from Forshay to Rodney took place at Forshay's office and was conducted by a representative of Nations Title.  Nations Title had been hired to conduct a search of the records relating to title for the property in question.  Nations Title did not sell or provide insurance; it was merely an agent for Lawyers Title.  As such, Nations Title's job was to search titles and report the results to others.  Nations Title incorrectly reported the status of title in the course of its work on the transaction.  This was an admitted mistake.  As a result, and on the strength of the report, Lawyers Title issued

policies of insurance to Rodney and to Rodney's lender. The final policy did not reflect the Midfirst lien as an exception to title.

Forshay testified that he did not purchase a commitment for title insurance before he attended the foreclosure sale because he had attended between 100 and 150 foreclosure sales over the preceding 10 years and was the successful bidder only about 10% to 15% of the time. Purchasing title commitments under those circumstances would be cost prohibitive. Forshay was comfortable that he could convey clear title to Rodney because the offer to purchase included a financing contingency and there was no way Rodney could have obtained financing if his lender knew about the Midfirst loan. Further, Forshay was comfortable with closing for the same reason: he knew that Rodney's lender would not provide the financing to close if the Midfirst lien were shown as an exception to title. Regardless, Forshay testified that he did sign a warranty deed at the closing.

At the close of proofs, Nations Title filed a motion for a directed finding, which was granted by the trial court. The court found that Forshay failed to make a prima facie case for negligent misrepresentation for the following reasons: (1) it was undisputed that Forshay was not an insured under Nations Title's commitment or policy; (2) Forshay did not rely on any representations of Nations Title at the time he entered into the contract for sale with Rodney; (3) Forshay never purchased a title commitment for himself at any time after he acquired the property at the foreclosure sale through the time he sold the property to Rodney and signed the warranty deed; and (4) the facts of this case do not warrant a departure from the general rule that a title insurer is not in the business of supplying

information to third parties and thus do not warrant applying an exception to the Moorman doctrine.

Accordingly, Forshay timely appeals from the summary judgment wherein Lawyers Title, as subrogee for Rodney, received damages against Forshay for breach of warranty. Forshay also appeals from the trial court's directed finding in favor of Nations Title on the ground that Forshay failed to establish a prima facie case for negligent misrepresentation.

ANALYSIS

1. Liability for Breach of Warranty of Title Where Grantee is Aware of or Contributes to the Lien that Creates a Defect in Title

Forshay first argues on appeal that the trial court erred in granting summary judgment for breach of warranty of title because Rodney was aware of and contributed to the lien creating the defect in the title. Before addressing Forshay's argument on appeal, we note the familiar standards guiding our review. The purpose of summary judgment is not to try a question of fact, but rather to determine whether a genuine issue of material fact exists. Happel v. Wal-Mart Stores, Inc., 199 Ill. 2d 179, 186 (2002); Gilbert v. Sycamore Municipal Hospital, 156 Ill. 2d 511, 517 (1993). Summary judgment is appropriate only where "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2--1005(c) (West 2002).

In determining whether a genuine issue as to any material fact exists, a court must construe the pleadings, depositions, admissions, and affidavits strictly against the movant and liberally in favor of the opponent. A triable issue precluding summary judgment exists

where the material facts are disputed or where, the material facts being undisputed, reasonable persons might draw different inferences from the undisputed facts. The use of the summary judgment procedure is to be encouraged as an aid in the expeditious disposition of a lawsuit. However, it is a drastic means of disposing of litigation and, therefore, should be allowed only when the right of the moving party is clear and free from doubt. Gilbert, 156 Ill. 2d at 518 (and cases cited therein); accord Espinoza v. Elgin, Joliet & Eastern Ry. Co., 165 Ill. 2d 107, 113-14 (1995). In appeals from summary judgment rulings, review is de novo. Outboard Marine Corp. v. Liberty Mutual Insurance Co., 154 Ill. 2d 90, 102 (1992).

There is a dispute as to whether Rodney knew that an encumbrance remained on the property at the time or after Forshay executed the warranty deed. Rodney did acknowledge that, as of April 2000, he was aware of the Midfirst mortgage. But he specifically denied that he understood that the mortgage held by Midfirst remained as a lien on the property after he received the warranty deed from Forshay. Moreover, according to Rodney, Forshay told him that Bank United took care of the Midfirst mortgage and Rodney relied on that oral representation in believing that the Midfirst mortgage would be extinguished.

Forshay asserts that a careful examination of the record shows that Rodney was involved in making payments to Midfirst after the time he closed with Forshay. Forshay executed the warranty deed on October 13, 2000, at the closing, and Rodney admitted that Marena sent a mortgage check to RBMG, a servicer of the mortgage held by Midfirst, on November 30, 2000. Thus, Forshay contends that Lawyers Title cannot argue that Rodney

was not aware of and did not participate in the Midfirst lien after the time he closed with Forshay. Forshay believes that, at a minimum, this raises a fact issue that would make summary judgment inappropriate.

However, even if Rodney had been aware that the Midfirst mortgage remained as a lien on the property, we find that the trial court properly entered summary judgment against Forshay. Illinois law holds that "[t]he obligation of a covenant does not depend upon the knowledge, or want of knowledge, of the parties to a deed." Sondag v. Keefe, 251 Ill. App. 378, 380 (1929). Further, "[t]he fact that a purchaser may have actual knowledge of an incumbrance does not relieve the vendor of his liability upon the covenants contained in his deed. Such knowledge on the part of the purchaser does not operate as a release or discharge of a covenant." Sondag, 251 Ill. App. at 380.

Although the law is quite old, we find no reason to overturn it. Of importance is the covenant involved in the warranty deed itself. A warranty deed is a stipulation by the grantor in which he guarantees to the grantee that title to the property at issue will be good and that the grantor's possession is undisturbed. See Black's Law Dictionary 1425 (5th ed. 1979). By reason of the warranty covenant, Forshay warrants against more than failure of title; he also defends the title against all persons who may lawfully claim the same. Thus, when Forshay promised that the title to the property would be good, Rodney had a right to rely on that promise. A purchaser insists on a covenant of title in the first place because he either knows or is afraid that the title is unsound or no good. Accordingly, when a purchaser such as Rodney receives a covenant of good title, the law should allow him to enforce its performance and recover damages for its breach.

Ignoring this rule of law, Forshay continues to assert, as he did before the trial court, that where a party participates in the existence and continuation of a lien against property, that party should not be able to recover against a vendor who warrants good title. Citing general contract law, Forshay asserts that a party to a contract may not complain of a breach that has been caused by his own default. Forshay relies on several foreign jurisdiction cites in support of his argument, which we find not only nonbinding but also factually distinguishable for the following reasons.

Forshay first cites Byrne v. Kanig, 231 Pa. Super. 531, 332 A.2d 472 (1974), in which the court held that the purchasers of certain real estate could not complain of an encumbrance on the property where they purchased the property according to the terms of an installment purchase arrangement but failed to pay the taxes. The court held that, where the purchasers created the tax lien on the property, the seller could not be held to have breached the contract for purchase and sale, which provided for a deed "free from all encumbrances." The court held that the buyers could not complain of an encumbrance caused by their own failure to pay a debt in which they were involved. Byrne, 231 Pa. Super. at 536, 332 A.2d at 474.

In Byrne, the seller agreed to convey to the buyers a marketable title in fee simple, free from all encumbrances. However, as part of the installment contract, the buyers also agreed to pay all taxes at the time of purchase. In 1970, the city installed a sewer on the premises and assessed a tax on the property. The tax was not paid by the buyers, and the city entered a lien against the property. Subsequently, the buyers tendered the full purchase price, but refused to accept the special warranty deed, claiming that the sewer

lien was an encumbrance and that the seller was obligated to remove the encumbrance. The Byrne court applied the doctrine of equitable conversion. Byrne, 231 Pa. Super. at 534-35, 332 A.2d at 474. As a result, the buyers were deemed equitable owners as of 1966, when the contract was executed, and therefore, the property was considered "sold" as of 1966. Thus, the court found that the buyers were responsible for paying the tax. Because the property was already deemed sold to the buyers when the tax was assessed, the buyers had a duty to pay the tax and therefore could not complain of the encumbrance put on the land after the sale. Unlike the present case, the buyers in Byrne promised to pay the taxes, and the encumbrance arose after the sale had been completed.

Forshay also cites Weaver v. Blake, 300 N.W.2d 52 (S.D. 1980), in support of his argument. Weaver signed a promissory note in 1973 to help his son obtain a loan from Production Credit Association (PCA). Subsequently, in 1976, Weaver executed a warranty deed conveying 10 acres of land to his son. This deed was left in escrow, allegedly until the son obtained enough financing to pay for the 10 acres and to pay off the PCS loan. However, the deed was recorded in 1976 without Weaver receiving any money and without the PCS loan being extinguished. In 1978, the son was killed. An action was commenced seeking cancellation of the deed and other equitable relief. The trial court concluded that, since the warranty deed from Weaver to his son was voluntarily delivered to his son's agent, Weaver was barred from either attacking its validity or claiming any equitable interest in the conveyed land. The decision of the trial court was grounded on the provisions of South Dakota statutes that provided that every grant of an estate in real property is conclusive against the grantor, whereby the word "grant" in a conveyance

implies that the estate conveyed is free of encumbrances done, made, or suffered by the grantor. Weaver, 300 N.W.2d at 54.

On appeal, the court reviewed whether, prior to receiving payment, a grantor of real property who conveys title by warranty deed is barred from asserting a vendor's lien against the premises conveyed to secure payment of the unpaid purchase price. Weaver, 300 N.W.2d at 54. After stating the facts, the court described the elements of a vendor's lien under the state law and found that a genuine issue of material fact existed as to whether Weaver had a vendor's lien upon the land he conveyed to his son, and it reversed the trial court's grant of summary judgment. Weaver, 300 N.W.2d at 55. The Weaver court did state in dicta that a grantee cannot complain about encumbrances that he places on the land himself. However, the issue and facts in Weaver have no similarities to the issue and facts in the present case and we do not find it to be persuasive.

We also find Magraw v. Dillow, 341 Md. 492, 671 A.2d 485 (1996), relied upon by Forshay, distinguishable. There, Magraw owned a five-sixths interest in land, and other parties owned the remaining one-sixth interest. Knowing the one-sixth ownership by the others would cloud the title, Magraw embarked on a scheme to gain clear title to the real estate. He allowed the property taxes to lapse and then let the property go to a tax sale. Magraw was able to purchase the property at the tax sale. However, doing this created a right of redemption in the one-sixth owners. Magraw, 341 Md. at 495-96, 671 A.2d at 486. This right of redemption constituted an encumbrance, caused by Magraw's actions in allowing the tax sale to occur. Magraw, 341 Md. at 512, 671 A.2d at 494.

Magraw then sold the land to a developer by way of a special warranty deed. Magraw, 341 Md. at 497, 671 A.2d at 487. The developer's bank refused to extend financing because of the encumbrance on the property, and the developer sued Magraw. After concluding that the right of redemption was an encumbrance, the court concluded that Magraw created the encumbrance, covenanted that no such encumbrance would be on the property, and thereby breached the covenant. Magraw, 341 Md. at 512, 671 A.2d at 494-95.

Forshay cites the Magraw opinion for the proposition that "the party creating an encumbrance is the party charged with a violation of the covenant." However, Forshay misstates the holding. The Magraw court actually held that "[b]ecause [Magraw] created the defect in the foreclosure proceeding that produce[d] the encumbrance on the property, [he] 'committed the very act [he] covenanted against. [Citation.]' " Magraw, 341 Md. at 512, 671 A.2d at 495. Thus, under the reasoning of the Magraw case, to be liable for violating a covenant, a party must have actually made the covenant. In the present case, Rodney made no such covenant and, therefore, cannot be charged with a violation of the covenant. The Magraw court addressed a situation in which the seller created the encumbrance. Accordingly, Magraw is not applicable here.

Redding v. Fritz Silberman Realty Corp., 6 Ill. App. 3d 512 (1972), the only Illinois case cited by Forshay, although published, is of no precedential value as it is a Supreme Court Rule 23 order. See 134 Ill. 2d R. 23, Committee Comments. Accordingly, Redding is unavailing.

2. Recovery by Lawyers Title as Rodney's Subrogee for Breach of Warranty of Title

Forshay next contends that Lawyers Title is not entitled to recover as Rodney's subrogee for breach of warranty of title. Forshay asserts that instead of subrogation, the appropriate remedy for Lawyers Title in this case is indemnity from its agent, Nations Title. We disagree.

The prerequisites to subrogation are: (1) a third party must be primarily liable to the insured for the loss; (2) the insurer must be secondarily liable to the insured for the loss, under an insurance policy; and (3) the insurer must have paid the insured under that policy, thereby extinguishing the debt of the third party. State Farm General Insurance Co. v. Stewart, 288 Ill. App. 3d 678, 686-87 (1997).

All of the prerequisites have been met in this case. Here, the third party, Forshay, is primarily liable to the insured, Rodney, for his loss as a result of Forshay's breach of warranty under the warranty deed. There also is no dispute that Lawyers Title is liable to Rodney for any loss suffered by Rodney that was covered by Lawyers Title's title insurance policy issued to Rodney. There also is no dispute that Lawyers Title paid Midfirst $47,478 to satisfy its mortgage.

Forshay asserts that, because he has filed a third-party complaint against Nations Title, this should prevent a judgment from entering in favor of Lawyers Title and against him. We fail to see how this affects the finding that all of the elements of a subrogation claim have been met by Lawyers Title.

Forshay also asserts that Nations Title is primarily at fault. However, this has nothing to do with Lawyers Title's subrogation claim. Forshay was primarily liable to Rodney due to his breach of warranty under the warranty deed. Lawyers Title was

secondarily liable to Rodney due to the insurance policy that it issued to Rodney. The "primary" and "secondary" distinctions apply as between the third party (Forshay) and the insurer (Lawyers Title). It is not a defense to a subrogation claim that someone else may have liability to Forshay. Lawyers Title's subrogation simply is not subject to Forshay's third-party complaint against Nations Title.

We further find Forshay's reliance on the cases he cites unpersuasive. In Dix Mutual Insurance Co. v. LaFramboise, 149 Ill. 2d 314 (1992), the court found that the landlord's insurer had no cause of action against the landlord's tenant because the landlord itself had no cause of action against the tenant. The court stated: "One who asserts a right of subrogation *** can only enforce those rights which the [party whose claim or debt has been paid] could enforce." LaFramboise, 149 Ill. 2d at 319. It has already been determined that Forshay is liable to Rodney and thus the LaFramboise case has no bearing here.

Forshay also argues that a balancing of equities must take place between Lawyers Title and Forshay in order to determine whether the remedy of subrogation is available to Lawyers Title. He relies on American Surety Co. v. Morton, 200 F. Supp. 82 (E.D. Ill. 1961). In American Surety, a surety company paid certain delinquent obligations of a corporation and then sought subrogation against the guarantors of the corporation. Since the surety company was seeking subrogation against the guarantors rather than against the corporation, the court held that the surety company could not recover because there was no evidence that the guarantors had participated in any wrongdoing or negligence. American Surety, 200 F. Supp. at 87. The court reasoned that, since the surety company

was pursuing the guarantors of the corporation, the surety company could not collect unless there was a balancing of the equities as between the corporate guarantors and the surety company, which favored the surety company. Had the surety company sought recovery against the corporation itself, which was primarily liable on the obligations, the surety company would have been entitled to recovery automatically and without any balancing of equities. "With respect to recovery from a principal (the corporation), the right (of subrogation) is absolute; as to a third person (guarantors), it is conditional." American Surety, 200 F. Supp. at 87. We find that Forshay's reliance on American Surety is based on a misreading of the case, as Lawyers Title's right to collect against Forshay is absolute and no balancing of equities need be considered.

Forshay relies on a case from another jurisdiction, Meridian Title Insurance Co. v. Lilly Homes, Inc., 735 F. Supp. 182 (E.D. Va. 1990), wherein the court strictly relied on Virginia law in concluding that subrogation should not be allowed. However, even the Meridian court noted the general law of subrogation in stating that "[t]he purpose of subrogation is to ensure that when one is more fundamentally liable for a debt which another is obligated to pay, that person cannot enrich himself by escaping his obligation." Meridian, 735 F. Supp. at 186. Here, Forshay purchased the property subject to Midfirst's mortgage. Had Forshay never transferred the property to Rodney, he would have had to pay the Midfirst mortgage or face foreclosure. Instead, he sold the property to Rodney, and Lawyers Title was required to pay the Midfirst mortgage to protect Rodney. Forshay is asking the court to provide him with a windfall by having Lawyers Title pay a preexisting

obligation of his. Under these circumstances, it is clear that Forshay is more fundamentally liable for the Midfirst debt than Lawyers Title.

Even if we were to balance the equities, we would determine that the equities do not favor Forshay. Forshay owned the property subject to a valid mortgage by Midfirst. He could have protected himself by buying title insurance when he purchased the property. If he had done so, he could have simply tendered this matter to his insurer to defend him and to satisfy the Midfirst mortgage. Instead, he made the intentional business decision not to, and knowingly took the risk that the property would be encumbered.

Forshay next argues that Lawyers Title cannot assert a subrogation claim against him because it has an implied indemnity action against Nations Title. Without authority or support, Forshay asserts that Lawyers Title is not entitled to a judgment against him because "Lawyers Title has given no good reason why its remedy should be against Forshay rather than Nations Title." We fail to understand the assertion of this claim. The elements of subrogation have been met and Lawyers Title does not need to explain why it is not seeking relief against any other party who may potentially be liable. Further, the existence of some type of claim by Lawyers Title against Nations Title is simply not a defense to a judgment being entered against Forshay. Additionally, Kerschner v. Weiss & Co., 282 Ill. App. 3d 497 (1996), does not support Forshay's argument. There, implied indemnity was available because the plaintiff's liability was solely derivative. That is not the case here since Lawyers Title had direct liability to Rodney under the title insurance policy.

Forshay further argues that Lawyers Title has an explicit right to be indemnified by Nations Title pursuant to an agency agreement between the parties. This argument again

assumes incorrectly that a claim that Lawyers Title might have against Nations Title would provide a defense to Forshay against Lawyers Title's claim. Forshay himself must know this to be incorrect because he never asserted the existence of this agreement as an affirmative defense to Lawyers Title's claim.

Forshay cites paragraph four of the agency agreement between Lawyers Title and Nations Title in support of his argument. It is important to note that this provision of the agreement provides for liability only where Nations Title's actions would be determined to be grossly negligent. Any claim Lawyers Title may assert against Nations Title would likely be vigorously defended by Nations Title, which no doubt would argue that its actions were not grossly negligent. However, even if Lawyers Title has a clear cause of action against Nations Title, Forshay cannot assert the existence of that claim as a defense to the cause of action that Lawyers Title clearly has against Forshay.

Forshay next asserts that Lawyers Title failed to perfect its subrogation claim because it paid the mortgage before demanding that Forshay pay it. In support of this argument, Forshay relies on the case of In re Marriage of Milliken, 199 Ill. App. 3d 813 (1990). Milliken does not stand for the proposition that one seeking subrogation needs to make a demand upon the defendant prior to paying the obligation for which the plaintiff is secondarily liable. The issue before the court concerned subject matter jurisdiction. The language cited by Forshay in his brief is only dicta. The Milliken court simply acknowledged that one who voluntarily pays an obligation, without any legal liability, has no ability to collect from anyone else based upon a subrogation claim. Milliken, 199 Ill. App. 3d at 819. In this case, Lawyers Title did have a legal obligation to pay the Midfirst mortgage.

Accordingly, Lawyers Title was able to state a claim for subrogation against Forshay.  The Milliken case is therefore inapplicable.  We have found no authority that requires a party seeking a subrogation to make a demand, give notice, or tender a defense as a prerequisite to a subrogation claim.

In his last argument against Lawyers Title, Forshay contends that he should not be liable for interest and costs.  Forshay claims that he should be liable only for the amount that would have been required to pay off the Midfirst mortgage on the date that Midfirst sought to foreclose the mortgage, approximately $31,000.  He contends that, by not tendering the defense of the claim to him in the first instance, and by not demanding that he pay off the mortgage earlier in the proceedings, thousands of dollars' worth of interest on the mortgage and attorney fees have been allowed to accumulate, and these costs would not have been incurred if Lawyers Title had demanded payment from Forshay earlier.  However, Forshay cites no authority for the proposition that he therefore should not be liable for them.  The failure to cite authority to support legal arguments results in waiver of the arguments.  In re Dontrale E., 358 Ill. App. 3d 136, 139 (2005).  Waiver aside, we do not find the argument persuasive.  Lawyers Title defended the foreclosure action in good faith.  While Midfirst's claim no doubt increased while Lawyers Title was defending the foreclosure case, if Lawyers Title had been successful in defending the foreclosure, it would have avoided the necessity of proceeding with the claim against Forshay.  This effort by Lawyers Title should not now be used against it by Forshay.  Additionally, given Forshay's vigorous defense in this case, it is impossible to believe that he would have immediately

paid the Midfirst mortgage or accepted the defense of the foreclosure. If he had agreed to defend the foreclosure, he would have incurred his own costs in doing so.

### 3. Liability Against Nations Title for Negligent Misrepresentation

Forshay next contends that the trial court erred in granting Nations Title's motion for a directed finding that Forshay failed to prove his claim for negligent misrepresentation. In particular, Forshay contends that the trial court erred in determining that Nations Title was not in the business of supplying information to third parties so as to create liability for negligent misrepresentation.

A motion for a directed finding is presented at the close of the plaintiff's evidence and is governed by section 2--1110 of the Code of Civil Procedure (735 ILCS 5/2--1110 (West 2000)). It provides that the trial court "shall weigh the evidence, considering the credibility of the witnesses and quality of the evidence." Therefore, at the close of the plaintiff's evidence, the court (1) determines whether the plaintiff has made out a prima facie case, and then (2) weighs the evidence, including that which favors the defendant; if this weighing process negates some of the evidence necessary to the plaintiff's prima facie case, the court should grant the motion and enter judgment for the defendant. Kokinis v. Kotrich, 81 Ill. 2d 151, 154-55 (1980); Zankle v. Queen Anne Landscaping, 311 Ill. App. 3d 308, 311 (2000). The grant of a section 2--1110 motion is upheld unless the judgment is against the manifest weight of the evidence. Kokinis, 81 Ill. 2d at 154.

To state a claim for negligent misrepresentation, a plaintiff must allege: (1) a false statement of material fact; (2) carelessness or negligence in ascertaining the truth of the statement by the party making it; (3) an intention to induce the other party to act; (4) action

by the other party in reliance on the truth of the statement; (5) damage to the other party resulting from such reliance; and (6) a duty on the party making the statement to communicate accurate information. Board of Education of the City of Chicago v. A C & S, Inc., 131 Ill. 2d 428, 452 (1989).

After the filing of this appeal, the Illinois Supreme Court noted, in First Midwest Bank, N.A. v. Stewart Title Guaranty Co., 218 Ill. 2d 326 (2006), that the Moorman doctrine bars a claim by an insured lender against a title insurer for negligent misrepresentation based on an inaccurate title insurance commitment. First Midwest, 218 Ill. 2d at 337. The court observed that Moorman bars recovery in tort for purely economic losses, but provides an exception for a claim of negligent misrepresentation where the defendant is in the business of supplying information for the guidance of others in their business transactions. See Moorman Manufacturing Co. v., National Tank Co., 91 Ill. 2d 69, 89, 91 (1982).

In First Midwest, the title commitment at issue failed to disclose a recorded building restriction that prohibited use of the property for commercial purposes. In seeking recovery for negligent misrepresentation, the lender argued that the title insurer was in the business of providing information for the guidance of others when it issued a title commitment, and thus the lender's claim fell within the exception to the Moorman doctrine. The supreme court concluded that a title insurer is not in the business of supplying information when it issues a title commitment or a policy of title insurance and, accordingly, the negligent misrepresentation exception to the Moorman doctrine does not apply. First Midwest, 218 Ill. 2d at 341.

Forshay attempts to distinguish the present case from First Midwest by arguing that Nations Title is an agent, as opposed to a title insurer. We agree with Nations Title that this distinction makes no difference under the analysis of First Midwest. The title commitment at issue in First Midwest was, in fact, issued by an agent. First Midwest, 218 Ill. 2d at 329. Moreover, whether a title commitment is issued by the insurer or its agent is of no relevance under First Midwest. An agent obviously acts on behalf of its principal when issuing a title commitment or policy. The title commitment makes clear that it is not an abstract, nor does an insurer or agent undertake any special duty to the insured in the preparation of the commitment or policy. The purpose of the title commitment is to set forth the terms for issuing a policy of title insurance, and the purpose of the policy of title insurance is to insure against the risk of undiscovered defects, liens, and encumbrances. First Midwest, 218 Ill. 2d at 341. Based on the holding in First Midwest, we affirm the decision of the trial court, which found that Nations Title is not in the business of supplying information and which barred economic recovery for tort under the Moorman doctrine.

Furthermore, based on the holding in First Midwest, we find Forshay's reliance on the cases in support of his argument irrelevant. For the same reason, we need not address Forshay's remaining arguments.

CONCLUSION

For the foregoing reasons, we affirm the judgment of the circuit court of Winnebago County. Affirmed.

GROMETER, P.J., and O'MALLEY, J., concur.

˘24˘