2019 IL App (2d) 190219-U
No. 2-19-0219
Order filed November 15, 2019

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| *In re* MARRIAGE OF | ) | Appeal from the Circuit Court |
| TAMI R. KELLERMAN, | ) | of Winnebago County. |
| | ) | |
| Petitioner-Appellee, | ) | |
| | ) | |
| v. | ) | No. 12-D-1187 |
| | ) | |
| MICHAEL B. KELLERMAN, | ) | Honorable |
| | ) | Gwyn Gulley, |
| Respondent-Appellant. | ) | Judge, Presiding. |

JUSTICE ZENOFF delivered the judgment of the court.
Justices McLaren and Hutchinson concurred in the judgment.

**ORDER**

¶ 1    *Held*:  (1) The trial court properly denied respondent's petition to hold petitioner in civil contempt, as he did not seek compliance with any order; (2) the trial court did not deny respondent due process by suspending oral arguments and ordering written ones; (3) the trial court did not abuse its discretion by ordering respondent to pay 70% of a child's educational expenses, as the record did not show that the court understated petitioner's income, which was substantially below respondent's.

¶ 2    On January 9, 2015, the circuit court of Winnebago County entered a judgment dissolving the marriage of Tami R. Kellerman and Michael B. Kellerman. Tami and Michael had three children: Jacob (born December 31, 1996), Noah (born August 14, 1999), and Layla (born July 5, 2006). On June 26, 2018, Tami filed a petition for educational expenses. The petition does not

appear to have been included in the record. However, we are able to glean from the record that Tami sought to hold Michael responsible for a portion of Noah's college expenses. In connection with the proceedings on Tami's petition, Michael filed a petition to hold Tami in indirect civil contempt. The trial court entered orders: (1) granting Tami's petition for educational expenses and ordering Michael to pay 70% of Noah's college costs and (2) denying Michael's petition to hold Tami in indirect civil contempt. Michael appeals *pro se*. We affirm.

¶ 3                                  I. BACKGROUND

¶ 4     At the hearing on Tami's petition, which took place on August 8, 2018, the parties supplied the trial court with their financial affidavits. Although it appears that Tami's affidavit is not part of the record on appeal, Michael made reference to its contents during the hearing, asserting that it did not accurately reflect her income. He stated that her pay stubs showed that she was paid $1944 every two weeks, which equaled $42,012 per year. Michael further stated that Tami's affidavit did not include, as income, $1240 in monthly child support payments that she received from him. Michael also made reference to a different financial affidavit from Tami, which was dated October 17, 2017. He noted that that affidavit listed "monthly minor dependent expenses" in the total amount of $749 for both Noah and Layla. Michael further noted that the same amount appeared on her most recent affidavit, even though Noah was no longer a minor. Michael argued that the monthly minor dependent expenses should therefore have been reduced by at least 50%.

¶ 5     Michael contended that Tami's affidavit omitted $1400 to $1500 that she received, or should have received, from her live-in boyfriend.[1] In addition, Michael maintained that Jacob,

---

[1] Michael stated that, at a prior hearing, Tami admitted that she received $1000 per month. Tami stated, "I have never seen any kind of transcript that says that I *** am receiving $1,000.

who lived with Tami, was an employed adult and was able to contribute $600 to $700 as rent and for payment of his share of household expenses. Michael maintained that those amounts should be treated as income. He contended that when Tami's monthly income and expenses were properly calculated she had a positive cash flow of $1700.

¶ 6    Michael's financial affidavit, which was dated July 20, 2018, showed (1) a monthly gross income of $13,844; (2) deductions totaling $7130 for withheld taxes, payroll taxes, and insurance premiums; (3) the $1240 in child support; (4) $7186 in living expenses; and (5) monthly payments of $100 for credit card debt. According to the affidavit, Michael had a negative cash flow of $572.

¶ 7    The trial court ruled that the parties would be responsible for college expenses totaling $12,471. With respect to the parties' respective financial positions, the trial court made the following findings:

"[Michael] provided check stubs which showed year-to-date annual income of $164,696.89. He also showed his expenses pursuant to his financial affidavit. There is a contribution to retirement of $1,583, housecleaning 105, repairs 285, entertainment, 150, gifts 130, donations $800, vacation 170, professional fees 380 for a total of $3,603. His financial affidavit indicated that he had a deficit of $572 which I find hard to believe considering his income, so at this point, I also looked at [Tami's] financial affidavit and her earnings were $50,544 plus child support in the amount of *** $1,240 a month. She had a deficit of $3,260. Her discretionary spending was a lot less; so weighing the two it appears that [Michael] was in a position to pay significantly more towards the educational

_____

*** I have never said to this Court that I receive $1,000 from him."

expenses. I'm going to allocate it at 70/30 so that would be $8,729 for [Michael] and $3,741 for [Tami] ***."

In a colloquy that occurred after the trial court announced its ruling, Michael asked whether the court "include[d] the thousand dollars [Tami] gets from her boyfriend." The trial court replied, "Yes, I did."

¶ 8    Michael moved to reconsider the order allocating college expenses. With respect to the question of whether Tami received any money from her boyfriend, Michael noted that, at a hearing held on June 16, 2015, Tami's attorney stated that Tami's boyfriend "does contribute a 1,000 a month to the rent." Michael also filed a petition to hold Tami in indirect civil contempt on the basis that her financial affidavit falsely omitted the $1000 per month that she received from her boyfriend and that she had lied in court when she denied receiving the money. The trial court held a hearing on the motion to reconsider, but suspended the hearing before the parties had completed their arguments. The court instructed the parties to prepare written arguments. The court subsequently denied the motion to reconsider and the petition to hold Tami in contempt. This appeal followed.

¶ 9                              II. ANALYSIS

¶ 10    Michael initially argues that the trial court erred in refusing to hold Tami in contempt for omitting from her financial affidavit the payments she purportedly received from her live-in boyfriend. Michael also contends that Tami should have been held in contempt for falsely stating in court that she had not previously told the court that she received money from her boyfriend. The argument is meritless. Michael sought to have Tami held in *civil* contempt. "A civil contempt charge is generally brought to compel compliance with a court order." *Windy City Limousine Co.*

*LLC v. Milazzo*, 2018 IL App (1st) 162827, ¶ 38. Here, there was no order with which to compel compliance. Thus, Michael's petition was properly denied.

¶ 11    Michael next contends that he was deprived of due process of law when the trial court suspended the oral argument on his motion to reconsider and ordered the parties to submit written arguments. The argument is likewise meritless. "Requirements of due process are met by conducting an orderly proceeding in which a party receives adequate notice and an opportunity to be heard." *Reichert v. Court of Claims of State of Illinois*, 203 Ill. 2d 257, 261 (2003). The opportunity to be heard does not necessarily entail the right to an oral argument. As the United States Supreme Court has noted:

> "[D]ue process of law has never been a term of fixed and invariable content. This is as true with reference to oral argument as with respect to other elements of procedural due process. For this Court has held in some situations that such argument is essential to a fair hearing, [citations], in others that argument submitted in writing is sufficient. [Citations.]
>
> *** [T]he right of oral argument as a matter of procedural due process varies from case to case in accordance with differing circumstances, as do other procedural regulations. Certainly the Constitution does not require oral argument in all cases where only insubstantial or frivolous questions of law, or indeed even substantial ones, are raised." *Federal Communications Commission v. WJR, The Goodwill Station, Inc.*, 337 U.S. 265, 275-76 (1949).

The issues raised in Michael's motion to reconsider were not particularly complex and the pertinent facts were matters of record. Under the circumstances, between the oral and written arguments that were presented, Michael had an ample opportunity to be heard.

¶ 12    Finally, we consider Michael's argument that the trial court erred by ordering him to pay 70% of Noah's educational expenses.  Michael contends that the court's decision was against the manifest weight of the evidence.  According to Michael, the decision was based on Tami's false assertion that she received no support from her live-in boyfriend.  However, as noted, in response to a query from Michael, the trial court made clear it had included the $1000 in its determination of her financial situation.

¶ 13    According to Michael, the financial affidavit that Tami submitted to the trial court at the August 8, 2018, hearing indicated that her monthly expenses exceeded her income by $3260.  In essence, Michael reasons that, because the trial court recited the same figure, it did not make any adjustments to the income and expenses itemized on the affidavit.  The argument assumes that, when the trial court remarked that Tami "had a deficit of $3,260," the court was stating that that amount was the bottom line of its own cash flow analysis.  However, the trial court might simply have been pointing out that $3260 was the amount that Tami reported in her affidavit as negative cash flow.  Although the trial court could have been clearer on this point, the remark does not indicate that the court adopted that figure.

¶ 14    Michael further contends that:

"[T]he preponderance of the evidence shows that [Tami's] actual and available income from her own salary at her job, the $1,240 per month child support she receives from [Michael], the reasonable financial contribution to house rent and utilities from her *** live in boyfriend, the reasonable financial contribution to house rent and utilities from her 22 year old live in son who has a full-time job is enough total income to cover household and expenses for herself and the parties's [*sic*] 12 year old daughter while being financially

able to contribute 50 percent of the parental share of college expense to the parties [*sic*] college son."

¶ 15　　We disagree.  The record does not show that Tami reported her salary inaccurately. Moreover, Michael cites no authority for imputing income to a party who allows an adult child to reside in his or her home rent-free.  The failure to cite authority to support legal arguments results in forfeiture of the arguments.  *Midfirst Bank v. Abney*, 365 Ill. App. 3d 636, 650 (2006).  Even if Tami's $1240 in monthly child support and $1000 in monthly payments from her boyfriend are added back to the negative cash flow figure ($3620) set forth in her financial affidavit, she would still be left with negative cash flow of $1380 per month.

¶ 16　　We note that "[a] trial court's decision to award educational expenses will not be reversed absent an abuse of discretion."  (Internal quotation marks omitted.)  *In re Marriage of Deike*, 381 Ill. App. 3d 620, 627 (2008).  In light of the disparity in the parties' incomes, Tami's negative cash flow, and the trial court's finding—unchallenged in this appeal—that Michael's discretionary spending substantially exceeded Tami's, we cannot say that the trial court's decision was an abuse of discretion.

¶ 17　　　　　　　　　　　　　　　III. CONCLUSION

¶ 18　　For the foregoing reasons, the judgment of the circuit court of Winnebago County is affirmed.

¶ 19　　Affirmed.